No. 105.

## BRUMMIT v. FURNESS ET AL.

NEGLIGENCE.—*Owner Setting Out Fire on His Premises*—The owner has the right, for the purpose of reducing his land to a state of cultivation, to kindle a fire upon it, if he does so at a proper time, under ordinarily favorable circumstances, and in a reasonably prudent manner.

SAME.—*Starting Fire in Stubble or Peat Bed.*—It is negligence in an owner to start a fire on his own land when it is immediately surrounded by highly combustible and inflammable material, as stubble, up to the very border of an adjacent proprietor's soil, and from there on indefinitely; and so it is negligence in him to start a fire, in a dry time, in his peat bed, filled with rotten roots, if such bed is immediately surrounded by soil of the same kind owned by another.

SAME.—*Special Verdict.*—Where the facts, in an action for negligence, are found by a special verdict, it is the province of the court to decide whether such facts amount, at least *prima facie*, to negligence.

From the Porter Circuit Court.

*E. D. Crumpacker*, for appellant.

*H. A. Gillett*, for appellees.

REINHARD, J.—Appellees sued the appellant in the court below for damages caused by fire escaping from the appellant's premises, and which burned and destroyed the fences, peat-soil and crops of the appellees. It was alleged that the injury was caused by the negligence of the appellant in setting the fire and allowing it to escape therefrom and enter upon, ignite and burn the property of the appellees.

Issues were joined, there was a trial by jury and a special verdict was returned, upon which the court rendered judgment in favor of the appellees.

The only question discussed by counsel is that of the sufficiency of the special verdict to authorize the judgment rendered thereon by the court.

The jury found that the appellees were the owners and in possession of the forty acres of land described in the com-

plaint as belonging to them; that they were also the owners of twenty acres of hay, of the value of one hundred and five dollars; also, four acres of growing corn, and two hundred rods of post and rail fence—all of which property was situated on the real estate aforesaid; that the appellant was the owner and in possession of forty acres of land immediately adjoining that of the plaintiff on the west; that both said pieces of land were composed mainly of peat marsh from one foot to six feet deep, and the appellees' was principally grass ground and had recently been mowed over, at the time of the injury complained of; that early in the month of May, 1887, the defendant dug a small ditch one spade deep and two spades or about sixteen inches wide around about one acre of his said land adjoining that of the plaintiffs, the ditch on the east side of said acre being about three feet from the division fence between plaintiffs and defendant; that in digging said ditch he had thrown the material upon the space between the same and said fence, and the material so thrown out had, at the time of the setting of the fire hereinafter mentioned, become dry and inflammable, and such space was also covered to some extent with dry and inflammable grass and weeds; that on the fourth day of August, 1887, the defendant set fire to the place so surrounded by said ditch, which fire immediately ran over the same and burned off the stubble, and, at the same time, the defendant set fire to the dry peat at various points on said acre for the purpose of burning off such peat to reduce the land to the condition for raising cranberries; that the defendant allowed the fire to burn until the evening before its escape, as hereinafter mentioned, and during the intervening time the defendant also caused the said ditch on the east side to be deepened to the extent of one spade more; that the defendant left the fire on the evening of the 9th day of August, aforesaid, and did not return to the same until about half past eleven o'clock on the forenoon of the next day, but during the said forenoon his hired man was at work cut-

ting hay for himself something over a quarter of a mile from said fire and in sight thereof; that when the defendant was there at half-past eleven o'clock, as aforesaid, the fire was still burning, but confined to the defendant's land, and he and his hired man then went away half a mile to dinner; that while they were gone, and within an hour after the defendant left, the said fire escaped from his said land, and, by means of flying sparks and embers, jumped the said ditch on the east, and caught in and set fire to the inflammable material on the east side thereof, and from thence ran along the stubble over the plaintiffs' land, and continued to burn thereon, and the soil thereof, until the grass sod was destroyed, the peat burned to an uneven depth, and in many places down to the water level of the drainage system of said land, and thereby the said land was injured and damaged to the extent of one hundred and fifty dollars; the said hay was burned and destroyed, the said hay rake was burned and destroyed, the said growing corn was burned and injured to to the extent of thirty-eight dollars, and plaintiffs' fence burned and injured to the extent of thirty dollars ; that at the time the defendant set said fire, and while the same was burning on his land, the weather was very dry and hot, there having been no rain since the third day of July previous ; that the peat on the lands of both parties was unusually dry and inflammable, and there were also within and near the surface of the defendant's said burning piece many old decayed roots and limbs of trees, some of which extended to the margin of said ditch on the east; that fire burning in such soil ordinarily burns and smoulders in the peat, eating into the same, burning under the surface, and running along the sticks and roots, and coming out in new places for an indefinite length of time, and until put out by heavy rains, or subdued by active means, and is liable and likely to, and often does, in moderate wind, fly through the air and ignite combustible matter to a distance of several feet; that some of the plaintiffs and many neighbors, when they became aware of the fire, ran to the

same and attempted to beat it out, and arrest it, but that it was impossible so to do, the same having become wholly uncontrollable; that at the time the fire communicated with plaintiffs' lands, and the time the defendant was there, at half past eleven o'clock, a fairly fresh breeze was blowing, but not with more force, or velocity, than winds ordinarily are in such season during three or four days in the week; that the manner in which fires so burn, and operate in such lands as the defendant's, and the manner in which they so spread through the air, were known to men of ordinary experience before and during all the time of said fire, and that there was no independent or unusual cause intervening to produce the fire, which injured the plaintiff's property, other than the fire so set and encouraged by the defendant.

The remainder of the special verdict relates to the amount of the damages in case the finding is for plaintiffs.

It is insisted by the appellant that these facts do not show any negligence on his part, either in setting the fire or in suffering it to escape, and hence the judgment should have been for the appellant.

It is an old maxim that every man should so use his own property as not to injure that of his neighbor. It does not follow from this, however, that a man necessarily renders himself liable for damage in every instance where as a consequence of the use of his property injury may result to another.

It seems that the old common law rules in relation to the escape of fire from the premises of a terre-tenant to those of his neighbor were much more rigorous against the interest of the former than under modern laws. To such an extent was this the case that it was considered the duty of every one, when a fire broke out in his house or field, to control it so as to prevent injury to his neighbor, the question of negligence not entering into the consideration at all, and if he failed to so control it, and damage resulted to his neighbor, he was liable to him for it. See *Bennett* v. *Ford,* 47 Ind. 264.

By the statutes of 6 Anne, c. 31, and 14 George III., c. 78, this liability was taken away in the case of "Any person in whose house, chamber, stable, barn or other building, or on whose estate any fire shall *accidentally* begin."

The construction placed upon these statutes was such that the word " accidentally " was held to exclude all idea of negligence, and hence in cases of negligent burning the liability remained the same as before. But as an effect of these statutes the burden of proving negligence in actions therefor was cast upon the plaintiff, and it was no longer required to use the highest degree of diligence in the control of fires, but only " that required of a prudent man in the provident conduct of his business." Beven Negl., p. 978, *et seq.*

Both the decisions and the text-books contain much subtle learning and discussion upon the subject of how far a man's duties will require him to go in the exercise of proper diligence in cases of accidental fires; but the question with which we are more directly concerned in the case in hand is the kind of diligence required where the act of kindling the fire is one that was done intentionally by the party sought to be charged with liability.

Ordinarily, the owner or occupant of land has a right, doubtless, to set fire to rubbish and such useless articles as he desires to put out of his way so as to prepare the soil for cultivation. All the law requires of him under such circumstances is to use reasonable care and prudence to confine the fire to his own premises, and the party seeking to hold him liable for damages done by it is required to prove by a preponderance of the evidence that the injury was the result of his negligence. There may be circumstances, however, when it would be considered *prima facie* negligence in him to start the fire.

In *Hewey* v. *Nourse*, 54 Me. 256, DICKERSON, J., speaking for the court, says: " Every person has a right to kindle a fire on his own land for the purpose of husbandry, *if he does it at a proper time, and in a suitable manner,* and uses rea-

sonable care and diligence to prevent its spreading and doing injury to the property of others. The time may be suitable and the manner prudent, and yet, if he is guilty of negligence in taking care of it, and it spreads and injures the property of another in consequence of such negligence, he is liable in damages for the injury done. The gist of the action is negligence, and if that exists in either of these particulars, and injury is done in consequence thereof, the liability attaches; and it is immaterial whether the proof establishes gross negligence, or only a want of ordinary care on the part of the defendant."

It may be said that as a general rule there must be some proof of the negligence aside from the fact of the fire itself before liability will attach, but it is not required that there should be proof of negligence both in the setting of the fire and in properly guarding it afterwards. The Indiana case cited by the appellant's counsel does not attempt to enunciate a different doctrine. *Pittsburgh, etc., R. W. Co.* v. *Culver*, 60 Ind. 469. It is held in that case merely that, as a matter of pleading, negligence must be set up in permitting the fire to spread as well as in the kindling of it. See, also, *Louisville, etc., R. W. Co.* v. *Ehlert*, 87 Ind. 339; *Indiana, etc., R. W. Co.* v. *McBroom*, 91 Ind. 111.

It is held in Minnesota that, though the owner of land has a right to set fire to his grass and stubble thereon, for purposes of cultivation, yet he must select such a time, and do so in such a manner and under such circumstances, as make it appear probable that injury to others will not follow. *Dewey* v. *Leonard*, 14 Minn. 153; see, also, *Krippner* v. *Biebl*, 28 Minn. 139.

In New York it was held that liability attaches in a case where fire is kindled by one on his own premises if the fire was either started or suffered to spread by his own negligence. *Webb* v. *Rome, etc., R. R. Co.*, 49 N. Y. 420. In that case, FOLGER, J., speaking for the court, said: "We have the common law principle well established and thor-

oughly recognized and still existing to this extent : that he who negligently sets or negligently manages a fire in his own property, is liable to his immediate neighbor for the damage caused to him by the spread of the fire on to his neighbor's next adjacent property."

In a case decided in Pennsylvania, it was adjudged that greater caution is required when dealing with a subject of risk than under ordinary circumstances, and that a man is answerable for the consequences of negligence which are natural and probable, and might, by the exercise of ordinary prudence and forecast, have been foreseen ; while if his fault happen to concur with something extraordinary and not likely to be foreseen, he will not be answerable. *McGrew* v. *Stone,* 53 Pa. St. 436.

In a Massachusetts case it was said: " A man who negligently sets fire on his own land, and keeps it negligently, is liable to an action at common law for any injury done by the spreading or communication of the fire directly from his land to the property of another, whether through the air or along the ground, and whether he might or might not have reasonably anticipated the particular manner and direction in which it is actually communicated." *Higgins* v. *Dewey,* 107 Mass. 494.

In our own State it is held that it is incumbent upon the party on whose premises fire originates to exercise greater care and caution in the ratio in which the risk becomes greater. *Gagg* v. *Vetter,* 41 Ind. 228; *Collins* v. *Groseclose,* 40 Ind. 414; *Pittsburgh, etc., R. R. Co.* v. *Nelson,* 51 Ind. 150. And it was said, in an early case in Indiana, that if the injury is the natural and probable consequence of the act, and such as any prudent man must have foreseen, the defendant will be held liable. *Durham* v. *Musselman,* 2 Blackf. 96 (18 Am. Dec. 133), approved in *Sisk* v. *Crump,* 112 Ind. 504. See, also, *Young* v. *Harvey,* 16 Ind. 314. See, also, Cooley Torts, p. 509.

It is sometimes a matter of considerable difficulty to deter-

mine whether a given state of facts does, or does not, amount
to negligence. Where the facts are specially found, how-
ever, either by the court or jury, it becomes the province of
the court to decide whether such facts amount, *prima facie* at
least, to negligence.

It is said by an author in high standing, that " There may
be no direct proof of negligence; yet the way in which an
injury is done may be such that negligence is the most prob-
able hypothesis by which it can be explained, and when this
is so, the defendant must disprove negligence by showing that
he exercised due care." Whart. Negl. 871.

It is insisted by counsel for appellant that there are no
facts found by the jury which, upon their face, make a case
of negligence, either in kindling or in guarding the fire.

The appellant had a right, as we have seen, for the pur-
pose of reducing his land to a state of cultivation, to kindle
the fire upon his premises, if he did so at the proper time
and under ordinarily favorable circumstances and in a rea-
sonably prudent manner.

The facts, it is true, do not show that when the fire was
kindled there was any unreasonably high wind or other un-
favorable atmospheric condition, excepting that it was un-
usually dry and hot. But the facts do show this, and, further,
that there had been no rain for more than a month past, and
that the peat on the lands of these parties was unusually dry
and inflammable.

The facts. found further show that there were many old
decayed roots and limbs of trees extending from the appel-
lant's land to the border of the land of the appellees; that
fire burning in lands of the nature of these ordinarily burns
and smolders in the peat, eating into the same, burning un-
der the surface and running along the sticks and roots
and coming out in new places for an indefinite length of
time, and till the same is put out by heavy rains or subdued
by active means, and is liable and likely to, and often does,
in moderate wind, fly through the air and ignite combusti-

ble matter to a distance of several feet; that the manner in which fires burn and operate in such lands was known to men of ordinary experience before and during the time of the fire; that there was no independent or unusual cause intervening to produce the fire which injured the appellees' property other than the fire set and encouraged by the appellant.

The appellant admits that if " the original setting out of the fire was such that its escape under ordinary conditions and circumstances would be a natural and ordinary sequence," this would be such negligence as to charge him with liability. This, we think, can not be controverted. We think it is shown by the special verdict that the condition of the atmosphere and of the material to be burned was such, at the time chosen to kindle the fire, that sparks would almost inevitably fly into the highly combustible material adjacent to the appellant's soil and ignite it, and that men of ordinary prudence would know and recognize this principle also appears amply from the facts found.

This is not the case of the burning of ordinary dead timber or fallow. The care and prudence to be exercised depend, in a great measure, upon the quality and character of the material surrounding the fire as well as the condition of the atmosphere. Thus it was said in the case of *Webb* v. *Rome, etc., R. R. Co., supra*:

" But if in a time of extreme drouth and high wind, there be laid or suffered to gather a train of readily combustible matter up to the bounds of another's property, it is not to be denied that it is an act of negligence to drop fire at the hither end of that train; nor but that it is an ordinary, a usual, a necessary result, reasonably to be expected, that the fire will run from particle to particle through it, and catch in whatever will burn which is adjacent at the thither end."

And so we think it quite analogous to reason that where the fire is immediately surrounded by highly combustible and inflammable material up to the very border of the ad-

jacent proprietor's soil, and from there on indefinitely, it can not be denied that it is an act of negligence to kindle such fire ; and that it is a sequence reasonably to be expected that the slightest breeze will carry sufficient sparks of fire into such combustible matter and ignite it, consuming whatever property will burn which lies in its pathway. See *Louisville, etc., R. W. Co.* v. *Nitsche,* 126 Ind. 229.

We therefore conclude that the appellant was guilty of negligence in setting the fire, and that the court below correctly adjudged so.

If this be true, then it can make no difference whether the appellant used ordinary precaution to keep the fire from spreading or not.   The digging of the ditch, one spade deep, or a hundred feet deep, could not have prevented the flying of the sparks, which the jury found were the immediate cause of the communication of the fire from appellant's land to the inflammatory material on the land of the appellees.

Nor could the careful watching of the appellant, and his hired hand, avail to arrest the flight of the disastrous sparks. There was absolutely no safeguard after the setting of the fire, excepting its extinction.

We hold, then, that the facts found by the jury make a *prima facie* case of negligence against the appellant, and that the court committed no error in rendering judgment in favor of the appellees.

The judgment is affirmed, with costs.

CRUMPACKER, J., having been of counsel below, took no part in the decision of the questions involved in this case.

Filed May 14, 1891.