## THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY ET AL. *v.* CLARK, ADMINISTRATOR.

[No. 7,255. Filed March 8, 1912. Rehearing denied May 31, 1912. Transfer denied November 21, 1912.]

1. RAILROADS.—*Crossings.*—*Restoration and Maintenance of Highway Crossings.*—*Negligence.*—Section 5195 Burns 1908, §3903 R. S. 1881, imposes on railway companies the duty of restoring and maintaining the highway crossings in such a way as to be reasonably safe for travel, and a failure to discharge this duty is negligence. p. 401.

2. RAILROADS.—*Crossings.*—*Restoration and Maintenance of Highway Crossings.*—*Delegation of Duty.*—*Negligence.*—*Liability.*— The duty of a railroad company to restore and maintain highway crossings in such way as to be reasonably safe for travel, which is imposed by §5195 Burns 1908, §3903 R. S. 1881, cannot be delegated to others so as to relieve the company from liability in case of its breach, so that where independent contractors in charge of the construction of railroad tracks permit a crossing to become unsafe for travel, the railroad company is liable for an injury of which such negligence is the direct and proximate cause. pp. 401, 416.

3. RAILROADS.—*Crossing Accident.*—*Defective Crossing.*—*Concurring Cause.*—*Liability.*—Where the negligence of a railroad company in allowing a crossing to become defective was one of the causes which concurred in producing the injury, it will not be relieved from liability because its negligence was not the sole cause, nor because the negligence of another may have likewise concurred in producing such injury. p. 401.

4. RAILROADS.—*Crossing Accidents.*—*Complaint.*—*Defective Crossing.*—*Concurring Cause.*—*Proximate Cause.*—In an action against a railroad company for the death of plaintiff's decedent in a collision, at defendant's crossing, with a train in charge of an inde-

pendent construction company, the allegations of the complaint that the defective condition of the crossing prevented the buggy in which decedent was riding from safely passing beyond the crossing before the arrival of the train and thus caused the buggy to be on the crossing at the time the train passed over it, show that the negligence of the railroad company was one of the concurring causes which produced the injury, and it will be treated as one of the proximate causes, unless an independent agency intervened so as to break the chain of causation and become the sole proximate cause. p. 402.

5. NEGLIGENCE.—*Proximate Cause.—Intervening Agency.*—Although there is an intervening agency which directly produces an injury, the original negligence will be treated as the proximate cause of such injury, if the intervening agency was of such character, and the circumstances under which it occurred were such, that it might have been reasonably expected in the usual course of events and according to common experience, that such agency or a similar one would intervene in such way as likely to produce an injury similar to the one actually caused. p. 403.

6. NEGLIGENCE.—*Proximate Cause.—Intervening Agency.*—An independent intervening agency over which the original tort feasor had no control, and which was not put in motion by the original wrongful act, will be treated as the sole proximate cause of the injury produced, where the character of such intervening agency, and the manner of the intervention, were such as, under the circumstances, were not reasonably to have been expected to occur in the ordinary course of nature and according to common experience. p. 404.

7. NEGLIGENCE.—*Complaint.—Necessary Averments.—Sufficiency.*— To be sufficient, a complaint for damages, based on negligence, must aver that the negligence charged caused the injury of which plaintiff complains, either by a direct averment of such fact, or by the averment of specific facts of such a character that the ultimate fact that the injury resulted directly and proximately from the negligence charged must necessarily be inferred, and from which no other reasonable inference can be drawn. p. 404.

8. NEGLIGENCE.—*Complaint.—Sufficiency.—Inferences from Specific Facts.*—Where the specific facts alleged in a complaint for negligence are of such a character that two minds of equal intelligence and fairness might draw opposite inferences as to the existence of the ultimate fact that negligence charged caused the injury complained of, then no inference in favor of the existence of such fact can be drawn to aid the pleading. p. 405.

9. PLEADING.—*General Averments.—Specific Averments.—Control.*— In order that specific averments in a pleading may control the general allegations, they must be clearly repugnant thereto and show that the general allegation is untrue. p. 405.

10. NEGLIGENCE.—*Complaint.*—*General Averments.*—*Sufficiency.* — *Specific Averments.*—The general averment in a complaint that the negligence of the defendant caused the injury complained of, is sufficient, unless the specific averments are such as to show affirmatively that such negligence was not the proximate cause; but where, in addition to such general averment, specific facts are stated showing that an independent agency intervened and produced the injury charged, the court, in ruling on the demurrer, must determine whether the specific averments as to such intervening agency overcome the general averment that the injury was caused by the negligence of defendant.  p. 405.

11. NEGLIGENCE.—*Proximate Cause.*—*Intervening Agency.*—*Complaint.*—*Sufficiency.*—*General and Specific Averments.*—Where a complaint for injuries alleges generally that the injury was caused by the negligence of defendant, and also alleges specific facts showing that an independent agency intervened and directly produced the injury charged, if the court can say that the character of the agency and the circumstances under which it intervened, as shown by such specific averments, are such that the only legitimate inference to be drawn therefrom by any fair and reasonable mind is that the causation was broken by the intervention of such agency, and that it was the sole proximate cause of the injury charged, the general averment is overcome by the specific averments and the complaint is insufficient, but, if reasonable minds might reach opposite conclusions in determining whether the intervention of such agency should reasonably have been expected to occur in such way as to produce injury, the court cannot say as a matter of law that such specific averments overcome the general averment, and the complaint must be held sufficient.  p. 406.

12. RAILROADS.—*Crossing Accidents.*—*Intervening Cause.*—*Complaint.*—A railway company that permits its highway crossings to get out of repair may reasonably expect that trains of cars will pass over such crossings on the tracks constructed for that purpose, so that, where a complaint for the death of a person in a crossing accident alleged that the crossing was defective and unsafe, by reason of which the conveyance in which decedent was riding was unable to escape such crossing in time to avoid a collision with an approaching train in charge of an independent construction company, when, but for such unsafe condition, the collision could have been avoided, it cannot be said as a matter of law that the train which struck and killed the decedent was such an intervening agency as to break the chain of causation and prevent the negligence of the railway company from operating as a proximate cause of the injury.  p. 407.

13. RAILROADS.—*Crossing Accidents.*—*Railroad Tracks.*—*Warning of Danger.*—Railroad tracks are in themselves a warning of dan-

ger, and all persons must act on the assumption that trains are being operated thereon. p. 407.

14. RAILROADS.—*Crossing Accidents.—Proximate Cause.—Intervening Cause.—Anticipation of Details Leading to Injury.*—In an action for the death of plaintiff's decedent, who was killed by a train in charge of an independent construction company, because of defects in a highway railroad crossing which prevented decedent from passing over the crossing in time to avoid the collision, where the defect was due to the negligence of the railroad company, and was such as to render it probable that the progress of a person crossing the track would be unnecessarily or unreasonably retarded, and it might reasonably have been expected that trains would pass along the tracks across such highway, then it is not necessary, in order to render such railroad company liable for the injury which actually followed, that all the details leading up to the accident should be such as might reasonably have been foreseen, or that all the combination of circumstances which actually occurred might reasonably have been expected. p. 407.

15. NEGLIGENCE.—*Proximate Cause.—Intervening Cause.—Anticipation of Particular Injury.*—Whether the intervention of an independent agency might reasonably have been expected to occur in such a manner as to be likely to produce injury in connection with the original wrongful act is important for the purpose of determining whether the intervention of such agency breaks the chain of causation and becomes the sole proximate cause; and if it is determined that the chain of causation is not broken by the intervention of such agency, then it is wholly immaterial whether the particular injury which occurred could reasonably have been expected to occur to the particular person and in the particular manner in which it did occur, if it was the direct and natural result of the original negligence. p. 408.

16. NEGLIGENCE.—*Manner of Determining Whether Act or Omission is Negligent.*—The determination of whether an act or omission is negligent depends on whether an injury of some kind could reasonably have been expected to result from such act or omission. p. 409.

17. NEGLIGENCE.—*Reasonable Care.*—Reasonable care requires a person to anticipate and guard against what usually happens, and a failure to do so is negligence; but reasonable care does not require one to foresee and guard against that which is unusual and not likely to occur, and a failure to do so is not negligence. p. 409.

18. NEGLIGENCE.—*Liability.—Anticipation of Results.*—Where negligence is such as to render it probable that some injury will result to some person, the law imposes liability for all the injurious consequences which directly flow therefrom, regardless of whether

they might reasonably have been foreseen, unless the causation is broken by the intervention of some independent agency. p. 409.

19. NEGLIGENCE.—*Proximate Cause.—Intervening Agency.*—The intervention of an independent agency does not break the causation where the intervention of such agency ought to have been expected to occur according to ordinary experience, and, in such case, the original wrongdoer is liable for all injuries which follow as a direct result of the original negligence acting in combination with such intervening agency, even though the resulting injury could not have been produced by the original negligence alone. p. 410.

20. RAILROADS.—*Crossing Accidents.—Contributory Negligence.— Complaint.—Sufficiency.*—A complaint in an action for the death of plaintiff's decedent in a railroad crossing accident, alleging certain facts tending to show that decedent was in the exercise of due care when within a certain distance from the crossing, is not insufficient for failure to show that decedent used due care in approaching the tracks, since under §362 Burns 1908, Acts 1899 p. 58, plaintiff need not allege or prove freedom from contributory negligence. p. 412.

21. PLEADING.—*Complaint.—Sufficiency.—Disclosure of Defense.*— To render a complaint insufficient on the ground that it discloses a defense, such defense must appear from the direct affirmative allegations. p. 412.

22. RAILROADS.—*Crossing Accidents.—Defective Crossing.—Complaint.—Sufficiency.*—A complaint to recover for the death of a person, resulting from defects in a railroad highway crossing, alleging that the defect existed on a certain day and that decedent received her injuries by reason of such defect about 6:30 o'clock on the evening of that day, sufficiently shows that the defect existed at the time the injury occurred, since the law does not regard fractions of days in such cases. p. 413.

23. RAILROADS.—*Crossing Accidents.—Defective Crossing.—Evidence.*—In an action for the death of a person at a railroad crossing, evidence that the planks on the crossing were so placed as to leave a space of four or five inches between the plank and the rail, that a side track was from a foot to eighteen inches lower than the main track and that there was a hole between the two tracks, and that at the south end of the ties of the main track there was an abrupt ascent from the south of from twelve to eighteen inches, and that decedent's horse stopped because of the defective condition of the crossing while the buggy was on the track where it was struck by a passing train, sufficiently shows that the railroad company was negligent in permitting the crossing to become defective and remain out of repair and that such defective condition was a proximate cause of the injury. p. 414.

Cleveland, etc., R. Co. *v.* Clark—51 Ind. App. 392.

24. NEGLIGENCE.—*Contributory Negligence.—Jury Question.*—Contributory negligence is always a question for the jury, unless the facts are undisputed and are of such a character that only one inference can be fairly and reasonably drawn. p. 415.

25. APPEAL.—*Review.—Evidence.—Contributory Negligence.—Verdict.*—Where the evidence was sufficient to warrant the trial court in submitting the question of contributory negligence to the jury, its verdict that plaintiff was free from contributory negligence cannot be disturbed on the evidence on appeal. p. 415.

26. RAILROADS.—*Crossing Accidents.—Defective Crossing.—Concurring Cause.—Instructions.*—In an action for the death of a person at a railroad crossing, resulting from defects in the crossing which prevented decedent from avoiding collision with a passing train in control of an independent construction company, instructions that if the injury to decedent was caused proximately by the collision there could be no recovery against the railroad company, were properly refused, since, if the defective crossing was a proximate cause of the injury, the railroad company is not excused because another agency concurred in producing the injury. p. 415.

27. APPEAL.—*Review.—Instructions.—Consideration as a Whole.*—Although instructions complained of do not fully and accurately state the law when considered alone, the cause will not be reversed therefor, if, when considered in connection with all the other instructions given in the case, they are so supplemented and explained that the jury could not have been misled thereby. p. 416.

28. APPEAL.— *Review.—Presumptions.—Instructions.— Damages.*—Where an instruction expressly limits the jury in assessing damages to the consideration of evidence relating to the subject of damages, it will be presumed that the jury obeyed same and that, in fixing the amount of damages, it considered only the evidence having a legal relation to that subject. p. 416.

29. TRIAL.—*Limiting Consideration of Facts.—Instructions.—Duty to Request.*—Where facts have been developed during a trial which, in the opinion of a party to the cause, may be improperly considered by the jury, it is the duty of such party to request an instruction warning the jury against the improper consideration of such facts, and, failing to do so, such party cannot complain on appeal that the instructions given did not properly limit the consideration of such facts. p. 417.

30. APPEAL. — *Review. — Harmless Error.—Instructions.—Assumption of Fact.—Wrongful Death.*—Where an instruction on damages in an action for death proceeded on the hypothesis that the jury find for the plaintiff, and started by informing the jury that, if it finds for the plaintiff, it will be its duty to assess damages, and all that follows proceeds on the supposition that the jury must have found the material facts in favor of plaintiff, before

it is called on to consider the question of damages, a finding for plaintiff would be a finding that the death was wrongful, so that a defect in the instruction in referring to the death as wrongful does not warrant a reversal. p. 417.

From Clay Circuit Court; *John M. Rawley,* Judge.

Action by William P. Clark, administrator of the estate of Maggie Clark, deceased, against The Cleveland, Cincinnati, Chicago and St. Louis Railway Company, and others. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*George A. Knight, Sullivan & Knight, F. L. Littleton* and *A. W. Knight,* for appellants.

*S. M. McGregor* and *S. A. Hays,* for appellee.

LAIRY, J.—This action was brought by appellee to recover damages from appellants and the Guilfoil Contracting Company on account of the alleged negligent killing of appellee's decedent, Maggie Clark, on November 1, 1906. The complaint is in two paragraphs, to each of which a demurrer was overruled. Defendants filed separate answers in general denial, and the issues thus formed were tried by a jury, which returned a verdict in favor of appellee and against appellants, and in favor of defendant Guilfoil Contracting Company. This appeal is taken from a judgment rendered on this verdict.

The complaint sets forth that the main line of the Big Four Railway Company runs east and west through Clay county, Indiana, and crosses a highway, near the town of Perth, in Clay county, known as the Caseyville and Perth gravel road; that said railway company had employed appellant Wabash Construction Company and the Guilfoil Contracting Company to construct two additional sets of tracks paralleling the main line, and located immediately to the south of the main line, between certain points along the road; that these new sets of tracks had been practically completed, at the time of the accident complained of, at and across the highway above referred to; that appellee's

decedent, Maggie Clark, and her sister-in-law were driving a horse, hitched to a buggy, towards the north, and along said highway, and were in the act of crossing the tracks when the conveyance in which they were riding was struck by a train of flat-cars, which was being backed by an engine towards the east, over the middle or second set of tracks, by the Guilfoil Contracting Company and the Wabash Construction Company, and that in consequence thereof decedent was thrown out of the buggy onto the track, and run over by the train and killed. The theory of the complaint is that the accident was caused by the combined negligence of the railway company and the two construction companies.

For the purpose of charging negligence against the railway company it is alleged, in substance, in the first paragraph of complaint that at the place where the railway tracks crossed said highway the two tracks in process of construction were south of the main track of the railway, parallel therewith and about eight feet apart, the nearest being about eight feet from the main track; that the two tracks in process of construction were on the same level, and on a grade about five feet high, while the grade of the main track at that point was about two feet above the grade of the two tracks immediately south of it; that the highway described had been in existence for many years, and it was the duty of defendant railway company in constructing its railway tracks across such highway to do so in such a manner as to afford security for life and property, and to restore and maintain said highway at the place where it intersects and crosses its right of way and tracks in such a way as to make it suitable and safe for the traveling public, and so as not unnecessarily to impair its usefulness; that defendant failed to perform its duty in this respect, by negligently suffering the highway crossing at the place described to get out of repair, and to become unsafe and dangerous for travel; that said highway crossing was permitted

to be torn and broken up, so as to leave the same with uneven surface, full of holes, and having steep grades and embankments thrown up and across the same; that the crossing of the main line was uneven, rough and unsecure, the planks thereon being placed and maintained so far apart as to render it unsafe for horses and vehicles to cross on account of the danger of horses becoming fastened and held in the space between said planks and the rails of said track; that the condition of the crossing as described existed on the day on which the injury occurred, and for six months prior thereto, and that defendant railway company knew of such condition, or might have known of it by the exercise of reasonable care. This paragraph further avers facts showing that plaintiff's decedent was riding in a buggy, north on said highway, at about 6 o'clock on the evening of November 1, 1906, and that the person with whom she was riding started to cross the tracks in process of construction and the main track of defendant railway company, and that when she was crossing the second or middle track a train of flatcars, operated by the construction company, was negligently run toward and against the buggy, causing the death of plaintiff's decedent; that the driver of the buggy and decedent observed the approach of the train, and endeavored to escape from the dangerous situation, but by reason of the defective and dangerous condition of the crossing, described in the complaint, they were unable to urge the horse up the steep and rough incline over the main track, and were also unable to back the horse off the track, or turn it aside in such a way as to avoid the collision, and that if said crossing had been maintained in a proper and suitable condition for travel the driver of the buggy would have been able to urge the horse forward across the track and avoid the injury.

The second paragraph contains substantially all the allegations of the first, and, in addition thereto, it avers that at the time the conveyance was crossing the middle track one of the horse's feet became fastened in the defective crossing,

and that this caused the horse to check its speed and stop, for which reason they were unable to cross the track in time to avoid the injury.

A demurrer filed by the railway company was overruled, and an exception taken by said defendant, and this presents the first error relied on for reversal.

The statute imposes on railway companies the duty of restoring and maintaining the highway crossings in such a way as to be reasonably safe for travel, and a failure to discharge this duty is negligence. §5195 Burns 1908, §3903 R. S. 1881; *Louisville, etc., R. Co.* v. *Smith* (1883), 91 Ind. 119; *Wabash R. Co.* v. *DeHart* (1903), 32 Ind. App. 62, 65 N. E. 192. This duty cannot be delegated to others so as to relieve the company from liability in case of its breach, and therefore if the independent contractors, to whom the defendant railway company let the work of constructing its tracks, negligently caused or permitted the crossing to become unsafe for travel, and an injury resulted, of which such negligence was the direct and proximate cause, defendant railway company is liable. *Southern Ind. R. Co.* v. *McCarrell* (1904), 163 Ind. 469, 71 N. E. 156.

It is insistently urged in behalf of appellant railway company that the complaint is insufficient as against it, for the reason that the facts averred fail to show that the defective condition of the highway crossing was the proximate cause of the train colliding with the buggy, and causing the injury described in the complaint. If the negligence of defendant railway company in respect to allowing the crossing to become defective was one of the causes which concurred in producing the injury, it will not be relieved from liability because its negligence was not the sole cause nor because the negligence of another may have likewise concurred in producing such injury. *Board, etc.,* v. *Mutchler* (1894), 137 Ind. 140, 36 N. E. 534; *Cleveland, etc.,*

*R. Co.* v. *Wynant* (1893), 134 Ind. 681, 34 N. E. 569; *Board, etc.,* v. *Sisson* (1891), 2 Ind. App. 311, 28 N. E. 374. The collision was caused by the train passing over the crossing while the buggy was on the track. The passing of the train may have been due to the negligence of the employes of the construction company, and the defect in the road could have nothing to do with that; but the question remains, Did the defect in the road cause the buggy to be on the track at the time the train passed? The buggy was on the track because it had proceeded thus far and failed to get beyond the track when the train passed. The defect in the track had nothing to do with causing the driver of the buggy to approach and enter on the track. That action was caused, according to the averments of the complaint, by the failure of the servants of the construction company to give a signal indicating the approach of the train or to display a warning light. But what prevented the buggy from safely passing over the track before the train reached the crossing? According to the averments of the complaint, the defect in the highway prevented the buggy and its occupants from safely passing beyond the crossing before the arrival of the train, and thus caused the buggy to be on the crossing at the time the train passed over it. Had it not been for the defects in the crossing, the accident would not have happened. The negligence of defendant railway company was, therefore, one of the concurring causes which produced the injury, and without which the accident would not have occurred; and it will be treated as one of the proximate causes, unless an independent agency has intervened in such a way as to break the chain of causation, and to become the sole proximate cause.

In this case, according to the averments of the complaint, an independent agency, operated by responsible agents, intervened between the negligence of the railway company and the injury to plaintiff's decedent, which intervening agency directly produced the injury of which plaintiff com-

plains. Where there is an intervening, responsible agency, which directly produces the injury, as in this case, the question as to whether the original negligence is to be regarded as the proximate cause of the injury, or only as a condition, or remote cause, is to be determined by ascertaining whether the agency which intervened was of such a character, and the circumstances under which it occurred were such, that it might have been reasonably expected that such agency or a similar one would intervene in such a way as to be likely to produce an injury similar to the one actually caused. If, under the circumstances, the intervention of such an agency in the manner stated might reasonably have been expected in the usual course of events and according to common experience, then the chain of causation, extending from the original, wrongful act to the injury, is not broken by the independent, intervening agency, and the original wrongful act will be treated as a proximate cause. *Nickey* v. *Steuder* (1905), 164 Ind. 189, 73 N. E. 117; *Claypool* v. *Wigmore* (1904), 34 Ind. App. 35, 71 N. E. 509; *Cleveland, etc., R. Co.* v. *Patterson* (1906), 37 Ind. App. 617, 77 N. E. 745; *Enochs* v. *Pittsburgh, etc., R. Co.* (1896), 145 Ind. 635, 44 N. E. 658; *Evansville, etc., R. Co.* v. *Allen* (1905), 34 Ind. App. 636, 73 N. E. 630; *Knouff* v. *City of Logansport* (1901), 26 Ind. App. 202, 59 N. E. 347, 84 Am. St. 292; *Miller* v. *St. Louis, etc., R. Co.* (1886), 90 Mo. 389, 2 S. W. 439; *Pastene* v. *Adams* (1874), 49 Cal. 87; *Bailey* v. *New Haven, etc., Co.* (1871), 107 Mass. 496; *Yocum* v. *Town of Trenton* (1886), 20 Mo. App. 489; *Brink* v. *Kansas City, etc., R. Co.* (1885), 17 Mo. App. 177; *Mahogany* v. *Ward* (1889), 16 R. I. 479, 17 Atl. 860, 27 Am. St. 753; *Scott* v. *Hunter* (1863), 46 Pa. St. 192, 84 Am. Dec. 542; 1 Sutherland, Damages §57; Wharton, Negligence (2d ed.) §999; *Pittsburgh City* v. *Grier* (1853), 22 Pa. St. 54, 60 Am. Dec. 65; *Terre Haute, etc., R. Co.* v. *Buck* (1884), 96 Ind. 346, 49 Am. Rep. 168.

On the other hand, if the agency intervening was one over

which the original tort feasor had no control, and which was not put in motion by the original wrongful act; and

6. if the character of the intervening agent, and the manner of the intervention, were such as, under the circumstances, could not reasonably have been expected to occur in the ordinary course of nature and according to common experience, then such independent agency so intervening will be treated as the sole proximate cause, and the original wrongful act will be treated as only a condition. *Seale* v. *Gulf, etc., R. Co.* (1886), 65 Tex. 274, 57 Am. Rep. 602; *Mutual Ins. Co.* v. *Tweed* (1868), 7 Wall. 44, 52, 19 L. Ed. 65; *Brandon* v. *Gulf City, etc., Mfg. Co.* (1879), 51 Tex. 121; *Lane* v. *Atlantic Works* (1872), 111 Mass. 136, 139; *Daniels* v. *Ballantine* (1872), 23 Ohio St. 532, 13 Am. Rep. 264; *McClary* v. *Sioux City, etc., R. Co.* (1873), 3 Neb. 44, 19 Am. Rep. 631; *Berry* v. *Borough of Sugar Notch* (1899), 191 Pa. St. 345, 43 Atl. 240; *Proctor* v. *Jennings* (1870), 6 Nev. 83, 3 Am. Rep. 240; *Morrison* v. *Davis & Co.* (1852), 20 Pa. St. 171, 57 Am. Dec. 695.

A complaint for damages, based on negligence, must aver that the negligence charged caused the injury of which plaintiff complains. This is an ultimate fact, and

7. must be shown either by a direct averment of such fact, or by the averment of specific facts showing that the injury and damage of which plaintiff complains resulted directly and proximately from the negligence charged. If the ultimate fact is not pleaded, the complaint is insufficient, unless the specific facts pleaded are of such a character that the ultimate fact must necessarily be inferred therefrom, and no other reasonable inference can be drawn. *Erwin* v. *Central Union Tel. Co.* (1897), 148 Ind. 365, 46 N. E. 667, 47 N. E. 663; *Brown* v. *Brown* (1893), 133 Ind. 476, 32 N. E. 1128, 33 N. E. 615; *Morgantown Mfg. Co.* v. *Hicks* (1910), 46 Ind. App. 623, 92 N. E. 199; *Indianapolis St. R. Co.* v. *Ray* (1906), 167 Ind. 236, 78 N. E. 978.

Where the specific facts alleged are of such a character

that two minds of equal intelligence and fairness might draw opposite inferences as to the existence of such ultimate fact, then no inference in favor of the existence of such fact can be drawn to aid the pleading.

This rule has been many times applied as the test for determining whether an ultimate fact can be inferred from specific facts in favor of a pleading. When a complaint contains a general averment of the ultimate fact, and where specific averments are relied on to overcome the general averment, by showing that it is not true, and thus to render the complaint defective, the same rule as to the force and effect to be given to specific averments holds good, but it is inversely applied. In such a case the general averment of the ultimate fact will control, unless it is shown to be untrue by the averment of specific facts. In order to overcome the general averment, the specific facts alleged must be of such a character that only one legitimate inference can be drawn therefrom, and that inference must be opposed to the ultimate fact stated in the general averment. If, from the specific facts averred, two minds, equally reasonable and honest, might draw opposite inferences as to the existence of the ultimate fact stated in the general averment, then the general averment will control. In order that specific averments in a pleading may control the general allegations, they must be clearly repugnant thereto, and show that the general allegation is untrue. *Warbritton* v. *Demorett* (1891), 129 Ind. 346, 27 N. E. 730, 28 N. E. 613. Where a complaint contains the general averment that the negligence of the defendant caused the injury complained of, this is sufficient, unless the specific averments are such as to show affirmatively that such negligence was not the proximate cause; but where, in addition to this general averment, specific facts are stated, as in this case, showing that an independent agency intervened and directly produced the injury charged, the court, in ruling on a demurrer to such complaint, is required to decide whether

such specific averments as to such intervening agency overcome the general averment that the injury was caused by the negligence of defendant. In deciding this question, the court must consider the facts specifically averred as true, and determine therefrom whether the chain of causation is broken by such intervening agency, so as to make it the sole proximate cause of the injury charged. This question must depend on whether, under the facts so specifically averred, the intervention of some such agency in such a way as to be likely to produce injury in conjunction with the original negligence ought to have been reasonably expected according to ordinary experience. If the court can say that the character of the agency and the circumstances under which it intervened, as shown by such specific averments, are such that only one legitimate inference could be drawn therefrom by any fair and reasonable mind, and that such inference is that the causation was broken by the intervention of such agency, and that it was the sole proximate cause of the injury charged, then such court may properly hold that such specific averments overcome the general averment, and should sustain the demurrer. On the other hand, if from the character of the intervening agency, and the circumstances under which the intervention occurred, as disclosed by such specific averments, reasonable minds might reach opposite conclusions in determining whether the intervention of an intervening agency of the character described should reasonably have been expected to occur in such a way as to produce injury, then the court may not say, as a matter of law, that such specific averments overcome the general averment. In such a case the demurrer must be overruled and the complaint be held sufficient on the strength of the general averment, regardless of the specific averments.

Applying the rule just stated to the facts alleged in the complaint, it seems reasonable to hold that a railway company which permits its highway crossing to get out of re-

pair ought reasonably to expect that trains of cars will pass over such crossings on the tracks constructed for that purpose. If a man is beaten and left in a helpless or unconscious condition on the tracks of a railroad, where he is run over and killed by a train, the wrongdoer most certainly could not escape liability for such death, either civilly or criminally, on the ground that such death was caused by the act of an independent, intervening agency.

Railroad tracks are in themselves a warning of danger, and all persons must act on the assumption that trains are being operated thereon. *Malott* v. *Hawkins* (1902), 159 Ind. 127, 63 N. E. 308; *Indianapolis Union R. Co.* v. *Waddington* (1907), 169 Ind. 448, 82 N. E. 1030; 3 Elliott, Railroads §1171; *Smith* v. *Wabash R. Co.* (1895), 141 Ind. 92, 40 N. E. 270; *Oleson* v. *Lake Shore, etc., R. Co.* (1896), 143 Ind. 405, 42 N. E. 736, 32 L. R. A. 149.

It is averred that the dangerous and unsafe condition of the highway crossing described in the complaint was caused or permitted by defendant railway company, and that by reason of such condition the driver of the conveyance in which plaintiff's decedent was riding was unable to escape from the crossing in time to avoid the threatened collision with the approaching train, when, but for said unsafe crossing, she could have done so. Under such circumstances, we cannot say as a matter of law that the train which struck and killed plaintiff's decedent was not such an agency as might not have been expected to intervene and produce injury to some person at the crossing in conjunction with the negligence of the railway company. The trial court properly held that this was a question for the jury.

Appellant railway company contends that it could not reasonably have been expected that this particular injury would occur in the peculiar manner in which it happened. It is argued that while the defects in the highway crossing might have been such as were liable

to impede the progress of a person in crossing the track, it could not reasonably have been expected that those in charge of a train on said tracks would be negligent in operating it, or that a person in the exercise of due care would be on the crossing at the time a train was approaching and would be prevented by the imperfections in the crossing from escaping the danger of a collision. Our opinion is that if the defect in the highway crossing was due to the negligence of the railway company, and was such as to render it probable that the progress of a person crossing the track would be unnecessarily or unreasonably retarded, and, if it might reasonably have been expected that trains would pass along said track across said highway, then it is not necessary, in order to render such defendant liable for the injury which actually followed, that all the details leading up to the accident should be such as might reasonably have been foreseen, or that all the combination of circumstances which actually occurred might reasonably have been expected. It is sufficient that the original negligent act was of such a character as to be likely to produce injury of some sort to some person, and that, under the circumstances, the intervention of the independent agency might reasonably have been expected, and that the injury actually followed as a natural and direct consequence of the original negligence, combined with the action of the intervening agency.

The question as to whether the intervention of an independent agency might reasonably have been expected to occur in such a manner as to be likely to produce injury in connection with the original wrongful act is important for the purpose of determining whether the intervention of such agency breaks the chain of causation and becomes the sole proximate cause; but once this question is determined and it is held that the chain of causation is not broken by the intervention of such agency, then it becomes wholly immaterial whether the particular injury which occurred could reasonably have been expected to occur

to the particular person and in the particular manner in which it did occur, provided of course, that it was the direct and natural result. So likewise, in determining whether an act or omission is or is not negligent, the question must depend on whether an injury of some kind to some person could reasonably have been expected to result from such act or omission. It has been well settled that reasonable care requires a person to anticipate and guard against what usually happens or is likely to happen, and that a failure to do this is negligence; but that reasonable care does not require him to foresee and guard against that which is unusual and not likely to occur, and a failure to do this is not negligence. *Young* v. *Harvey* (1861), 16 Ind. 314; *Wabash, etc., R. Co.* v. *Locke* (1887), 112 Ind. 404, 14 N. E. 391, 2 Am. St. 193; *Woodruff* v. *Bowen* (1894), 136 Ind. 431, 34 N. E. 1113, 22 L. R. A. 198; *Standard Oil Co.* v. *Helmick* (1897), 148 Ind. 457, 47 N. E. 14; *Baltimore, etc., R. Co.* v. *Slaughter* (1906), 167 Ind. 330, 79 N. E. 186, 7 L. R. A. (N. S.) 597, 119 Am. St. 503; *Brummit* v. *Furness* (1891), 1 Ind. App. 401, 27 N. E. 656, 50 Am. St. 215; *Consolidated Stone Co.* v. *Redmon* (1899), 23 Ind. App. 319, 55 N. E. 454.

Once it has been determined, however, from an application of the principle heretofore stated, that there has been a failure to use due care, by the party charged with negligence, it then becomes unimportant whether the particular injury which actually occurred could reasonably have been expected to happen in the manner in which it occurred. If the negligence is such as to render it probable that some injury will result to some person, the law imposes liability for all the injurious consequences which directly flow therefrom, whatever they are and regardless of whether they might reasonably have been foreseen or not, unless the causation is broken by the intervention of some independent agency. *Isham* v. *Dow's Estate* (1898), 70 Vt. 588, 41 Atl. 585, 45 L. R. A. 87, 67 Am. St. 691; *White Sew-*

*ing Mach. Co.* v. *Richter* (1891), 2 Ind. App. 331, 28 N. E. 446; *Chicago, etc., R. Co.* v. *Pritchard* (1907), 168 Ind. 398, 79 N. E. 508, 81 N. E. 78, 9 L. R. A. (N. S.) 857; *Louisville, etc., R. Co.* v. *Wood* (1888), 113 Ind. 544, 14 N. E. 572, 16 N. E. 197; *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413, 73 N. E. 899; *Pittsburgh, etc., R. Co.* v. *Sudhoff* (1910), 173 Ind. 314, 90 N. E. 467; *Cincinnati, etc., R. Co.* v. *Acrea* (1908), 42 Ind. App. 127, 82 N. E. 109; *Hohenstein-Hartmetz, etc., Co.* v. *Matthews* (1910), 46 Ind. App. 616, 92 N. E. 196; *Sweeney* v. *Merrill* (1888), 38 Kan. 216, 16 Pac. 454, 5 Am. St. 734; *Louisville, etc., R. Co.* v. *Falvey* (1886), 104 Ind. 409, 433, 3 N. E. 389, 4 N. E. 908; Wharton, Negligence (2d ed.) §§16, 17, 21, 76; *Schumaker* v. *St. Paul, etc., R. Co.* (1891), 46 Minn. 39, 48 N. W. 559, 12 L. R. A. 257; 29 Cyc. 492, and authorities cited.

As shown by the cases heretofore cited on this proposition, the rule seems to be well established that the intervention of an independent agency does not break the causation in cases where the intervention of such agency ought to have been expected to occur according to ordinary experience; and that, in such cases the original wrongdoer is liable for all injuries which follow as a direct result of the original negligence acting in combination with such intervening agency, even though the resulting injury could not have been produced by the original negligence alone. In the application of the rule to the particular facts of the different cases some confusion seems to have arisen, and it is difficult, if not impossible, to harmonize all of the reported cases. The case of *Chicago, etc., R. Co.* v. *Dinius* (1908), 170 Ind. 222, 84 N. E. 9, is decided on the authority of the case of *P. H. & F. M. Roots Co.* v. *Meeker* (1905), 165 Ind. 132, 73 N. E. 253. In the case of *King* v. *Inland Steel Co.* (1912), 177 Ind. 201, 96 N. E. 337, 97 N. E. 529, on petition for rehearing the Supreme Court expressly overruled the cases of *P. H. & F. M. Roots Co.* v. *Meeker, supra,* and

*Crawford & McCrimmon Co.* v. *Gose* (1909), 172 Ind. 81, 87 N. E. 711, on the very question here involved. The case of *Chicago, etc., R. Co.* v. *Dinius, supra,* was not expressly overruled, but it was stated in the opinion that it could be distinguished from the cases overruled. We are unable to distinguish it from those cases on the question here involved. It is suggested that in the overruled cases it appears that the negligence complained of consisted of the violation of a duty imposed by a positive statute, while in the Dinius case the negligence consisted of the violation of a duty existing at common law. The distinction suggested does not affect the application of the principle involved. In regard to the liability of a defendant for the injurious consequences which flow from his negligent act, it can make no possible difference whether the injury results from the violation of a statutory duty or a common-law duty, and the principle of law in reference to intervening agencies, as affecting the liability of the original wrongdoer, is alike applicable regardless of whether the duty violated is imposed by statute or exists at common law.

The Supreme Court in later cases has refused to follow the case of *Chicago, etc., R. Co.* v. *Dinius, supra,* on the point under consideration. *Pittsburgh, etc., R. Co.* v. *Sudhoff* (1910), 173 Ind. 314, 90 N. E. 467; *Balzer* v. *Waring* (1911), 176 Ind. 585, 95 N. E. 257. In view of this fact, and in view of the further fact that the cases cited as authority for the holding in the Dinius case have been expressly overruled, the authoritative force of that decision has been so weakened that it can no longer be regarded as authority on the question here involved.

Without attempting further to review the authorities, it is sufficient to say that we are satisfied that the averments of the complaint in this case are sufficient to justify the court in submitting to the jury the question as to whether the negligence of the railway company in permitting the high-

way crossing to become defective, as charged, was one of the proximate causes which concurred to produce the death of plaintiff's decedent, as alleged.

Appellant Wabash Construction Company also assigns as error the ruling of the trial court in overruling its demurrer to each paragraph of plaintiff's complaint. This appellant does not claim that the facts alleged are not sufficient to show that it was guilty of negligence, but it is contended on behalf of both appellants that the complaint, by affirmative averments, shows that appellee's decedent was guilty of negligence contributing to her injury.

The burden of proving contributory negligence in a case of this kind is on defendant, and plaintiff is relieved, by statute, of alleging or proving freedom from contributory negligence. In this case, plaintiff avers that his decedent was free from contributory negligence, but this averment is unnecessary, and it neither helps nor harms the complaint. The complaint alleges that the horse, drawing the buggy in which decedent was riding, approached the track in a walk, and that the occupants of the buggy were looking and listening for an approaching train, and that when they reached a point within thirty feet of the track they stopped and looked and listened for approaching trains. These specific averments do not tend to show that plaintiff's decedent was guilty of a failure to use due care in approaching the track. So far as they go, they tend to show precaution on her part. Appellants object to the complaint because it does not contain other averments showing that decedent used due care in approaching the tracks. The complaint would have been good without any averment showing care on the part of decedent as she approached the tracks. This being true, it cannot be held defective because it avers some facts tending to show due care and fails to aver others. To render a complaint insufficient on the ground that it discloses a defense, such de-

fense must appear from the direct, affirmative allegations of the complaint. The specific averments of the complaint do not show affirmatively that plaintiff's decedent was guilty of contributory negligence, and no presumption against plaintiff arises because of his failure to aver any fact tending to show due care on the part of decedent.

The complaint avers that the defect in the highway crossing existed on November 1, 1906, and had existed for a long time prior to that date, and that plaintiff's decedent received her injuries, by reason of such defect, about 6:30 o'clock on the evening of that day. Appellants make the point that these averments do not show that the defect existed at the time the injury occurred, and it is suggested that the defect might have been removed earlier in the day, and before the time of the injury. We are not impressed with this point. The law does not regard fractions of days in cases of this kind. If the averment had been that she was injured on that day, without specifying the hour, it would have been clearly sufficient; and we think that the complaint in this particular was sufficiently certain, and the separate demurrer of each appellant was properly overruled. With the general verdict the jury returned answers to a series of interrogatories. Appellant railway company assigns as error the ruling of the trial court in denying its motion for judgment on these interrogatories notwithstanding the general verdict. The questions presented on this assignment of error are the same as those already discussed in considering the sufficiency of the complaint. Each appellant filed a separate motion for a new trial, which motions were overruled and exceptions reserved. For the most part these separate motions present the same questions, and may be considered together.

The third reason assigned for a new trial is that the verdict of the jury is contrary to law. In support of this assignment, counsel present the same reasons urged against

the sufficiency of the complaint. For the reasons we have stated in holding the complaint sufficient, we hold that the verdict is not contrary to law.

The first cause assigned for a new trial questions the sufficiency of the evidence to sustain the verdict. On behalf of appellant railway company it is contended, (1) that there is no evidence showing that it was negligent in permitting the highway crossing to become defective and to remain out of repair; (2) that there is no evidence showing that the defective condition of the crossing was the proximate cause of the injury; (3) that the evidence shows without dispute that appellee's decedent was guilty of contributory negligence.

There is abundant evidence in the record to show that the crossing in question was in a defective condition, and was unsafe for use at the time of the accident, and had been so for several weeks prior thereto. Numerous witnesses testified that the planks on the crossing were so placed as to leave a space of four or five inches between the planks and the rail; that the track to the south of the main track was from a foot to eighteen inches lower than the main track, and, as stated by some of the witnesses, there was a low place or hole between these two tracks; that at the south end of the ties of the main track there was an abrupt ascent from the south of from twelve to eighteen inches. The question as to whether the defective condition of the crossing was a proximate cause of the injury to plaintiff's decedent was, under the evidence in this case, one of fact for the jury. The evidence showed that the horse stopped while the buggy was on the track where it was struck, and there was evidence sufficient to justify the jury in finding that the defective condition of the crossing caused the horse to stop, and prevented the conveyance from passing over the crossing in safety. As to whether the evidence was sufficient to warrant the inference that the horse's foot was fast in the space between the plank and the rail of the main track, and to warrant the jury in so finding, we need

not decide. If the defects in the crossing, of whatever nature they were, caused the horse to stop, or so retarded his progress as to cause the buggy to be struck by the train, when otherwise it would have passed the crossing in safety, such defects could be properly held to be a proximate cause of the injury.

On behalf of both appellants, it is urged that the undisputed evidence shows contributory negligence on the part of plaintiff's decedent. Contributory negligence is always a question of fact for the jury, unless the facts are undisputed, and are of such a character that only one inference can fairly and reasonably be drawn.

In this case we have carefully examined the evidence relating to this question, and we are of the opinion that it was sufficient to warrant the court in submitting the question to the jury. The jury having passed on the question, and decided that, under the circumstances disclosed by the evidence, appellee's decedent was without fault contributing to her injury, this court cannot disturb the verdict on the evidence.

Each appellant has assigned as cause for a new trial the refusal of the court to give certain instructions requested by it. To take up and discuss each of these instructions separately would unduly extend this opinion, and would serve no useful purpose. Some of the instructions refused were intended to advise the jury that if it found that the injury to appellee's decedent was caused proximately by a collision with a train, under the control and management of an independent contractor, there could be no recovery against the railway company. For the reasons stated in discussing the sufficiency of the complaint, these instructions were properly refused. If the defect in the crossing was a proximate cause of the injury, the railway company would not be excused, because another agency also concurred in producing it.

Other instructions were properly refused, because they

were intended to advise the jury that the railway company would not be liable for any injury caused by a defect in the crossing occasioned by the act or neglect of an independent contractor. The railway company owed the duty of keeping the crossing in a reasonably safe condition for use, and this duty could not be delegated to others in such a way as to absolve it from liability. If the work which it authorized under the contract was of such a nature that an unsafe condition of the crossing was likely to be produced thereby, unless precautions were used, the railway owed the primary duty to see to it that those precautions were taken. The other instructions refused were either open to objections which justified their refusal or were covered in substance by the instructions given.

Objections are urged to several instructions given to the jury by the court of its own motion, and to certain instructions given at the request of appellee. We have carefully examined these instructions, and have reached the conclusion that no prejudicial error was committed by the court in the giving of any of them. It is true that some of the instructions of which appellants complain do not fully and accurately state the law when considered alone; but when considered in connection with all the other instructions given in the case, they are so supplemented and explained that the jury could not have been misled thereby.

The fifteenth instruction relates to the measures of damages. On this subject the jury was instructed in part as follows: "In determining this question you may take into consideration the age of the decedent, at the time of her death, the number and ages of her children, her habits of industry and frugality, the condition of her health prior to the accident, her ability to perform labor, the care and attention given and bestowed by her upon her children and husband, and from a consideration of these matters and all other facts within the evidence relating to this subject you will award such sum as will, in your judg-

ment, under the evidence, fully compensate the beneficiaries for the pecuniary loss they have sustained by reason of the wrongful death of the said Maggie M. Clark, not to exceed the sum of Ten Thousand Dollars.'' This instruction is attacked by appellants on two grounds. (1) Because the instruction does not exclude from the consideration of the jury the pain and suffering which decedent may have endured prior to her death, and the grief of her surviving relatives on account of her death, and (2) because it assumes that the death of appellee's decedent was wrongfully caused. Speaking as to the first objection, it will be observed that the instruction expressly limits the jury in assessing damages to the consideration of evidence relating to the subject of damages. It will be presumed that the jury obeyed this instruction, and that, in fixing the amount of damages, it considered only the evidence having a legal relation to that subject. If facts had been developed during the trial of the case which, in the opinion of appellants, were likely to be improperly considered by the jury in awarding damages; and if appellants desired to have the jury especially warned and instructed against considering such facts on this question, it was the duty of appellants to request an instruction of this character. Having failed to do so, they cannot now complain. As to the second objection, it may be said that the instruction is subject to criticism, in that it refers to the death, for which the action is brought, as being wrongful. Such expressions should never be employed in such a way as to assume the existence of a disputed fact. The entire instruction under consideration, however, proceeds on the hypothesis that the jury find for the plaintiff. The instruction starts out by informing the jury that if it find for the plaintiff it will be its duty to assess damages, and all that follows proceeds on the supposition that the jury must have found the material facts in favor of plaintiff, before

it is called on to consider the question of damages. A finding for plaintiff would be a finding that the death of appellee's decedent was wrongful. We do not think the error was such as to warrant a reversal.

From a consideration of the whole record, we think that a right conclusion has been reached, and that the judgment should be affirmed.

Judgment affirmed.

NOTE.—Reported in 97 N. E. 822. See, also, under (1) 33 Cyc. 270, 273; (3, 14) 33 Cyc. 365; (5) 29 Cyc. 499; (7) 29 Cyc. 572; (9) 31 Cyc. 85; (12, 22) 33 Cyc. 368; (13) 33 Cyc. 985; (16) 29 Cyc. 431; (17) 29 Cyc. 427; (19) 29 Cyc. 501; (20) 33 Cyc. 371; (21) 31 Cyc. 109; (23) 33 Cyc. 372; (24) 29 Cyc. 628, 631; (25) 3 Cyc. 348; (26) 33 Cyc. 373; (27) 38 Cyc. 1778; (28) 3 Cyc. 313; (29) 38 Cyc. 1693; (30) 38 Cyc. 1809. As to the doctrine of proximate and remote cause, see 36 Am. St. 807. As to the doctrine of concurring negligence, see 16 Am. St. 250.