# THE DELAWARE AND MADISON COUNTIES TELEPHONE COMPANY *v.* FLEMING.

[No. 8,003.   Filed June 17, 1913.]

1. NEGLIGENCE. — *Proximate Cause.* — *Complaint.* — A complaint against a telephone company on the theory of negligence in the maintenance of a certain guy wire, extending from one of defendant's poles to an anchor in the ground at a point immediately within the curb line of a certain street and alleging that plaintiff's horse, which became frightened and unmanageable by reason of escaping steam on the opposite side of the highway, ran and jumped across said wire and became entangled therewith and was thereby injured, is not objectionable on the theory that it shows that the escape of the steam was an independent proximate cause of the injury, and that the presence of the wire was only a condition and not the proximate cause. p. 559.

2. NEGLIGENCE.—*Injury to Property.—Contributory Negligence.—Complaint.—Burden of Proof.*—In an action for damages for injury to personal property, the plaintiff must allege and prove that he was free from any negligence contributing to such injury. p. 559.

3. NEGLIGENCE.—*Injury to Property.—Contributory Negligence.—Complaint.—Sufficiency.*—A complaint for injury to plaintiff's horse, alleging that plaintiff was exercising reasonable and ordinary care in its management and control, and that he was at all times free of negligence or fault that in any way contributed to the injury of said horse, sufficiently avers plaintiff's freedom from contributory negligence, in the absence of specific averments negativing the effect of such general allegation. p. 559.

4. NEGLIGENCE.—*Jury Question.*—Ordinarily negligence is a question of fact, but where the facts are undisputed and admit of but one inference, the question is one of law for the court. p. 561.

5. TELEGRAPHS AND TELEPHONES.—*Construction.—Negligence.—Evidence.*—In an action against a telephone company for injury to plaintiff's horse alleged to have been caused by coming in contact with a guy wire erected and maintained within the sidewalk line, where the undisputed evidence showed the size and presence of such wire and the manner and method of placing and maintaining same, and that the method of maintaining such wire was the usual and customary method and proper in all respects except in the matter of the projecting end, all of which was undisputed, and it was conceded by plaintiff that a guy wire was necessary, and it is in no way shown that such projecting end had anything

to do with the injury, the question of defendant's negligence was not a question of fact, but one of law for the court. p. 561.

6. TELEGRAPHS AND TELEPHONES.—*Use of Streets.*—The occupancy of the streets of a city by a telephone system is a proper street use, expressly recognized by §8696 Burns 1908, Acts 1905 p. 219, §93, but such use must not obstruct or unnecessarily interfere with the primary use of the streets for the passage of people and vehicles. p. 563.

7. MUNICIPAL CORPORATIONS.—*Use of Streets.*—It is within the discretion of the municipality to determine what part of the nominal highway shall be devoted to the various purposes of passage. p. 564.

8. TELEGRAPHS AND TELEPHONES.—*Use of Streets.—Negligence.*—In an action against a telephone company for injury to plaintiff's horse by coming in contact with a guy wire, where the evidence showed that the wire was within the sidewalk line and not an obstruction to that part of the street used for the passage of horses and vehicles, the fact that the end of such wire, where it was attached to the ground anchor, projected one and one-half inches at right angles from the wire, does not constitute negligence rendering defendant liable for the injuries complained of, where it is not shown that the projecting end had anything to do with such injuries. p. 564.

From Madison Circuit Court; *Charles K. Bagot*, Judge.

Action by James Fleming against The Delaware and Madison Counties Telephone Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Marcellus A. Chipman* and *Edgar E. Hendee*, for appellant.

*Henry C. Ryan*, for appellee.

HOTTEL, P. J.—This is an appeal from a judgment for $150 recovered by appellee in an action for damages on account of injuries to his horse alleged to have been caused by appellant's negligence. The complaint is in one paragraph. A demurrer thereto was overruled, after which appellant filed an answer in denial. There was a trial by the court, and finding for appellee. A motion for new trial was overruled. This ruling and the ruling on said demurrer are each assigned as error and relied on for reversal. The allegations of the complaint necessary to a

presentation of the objections urged against it are in substance as follows: The appellant is a corporation and owns and operates telephone lines. By virtue of an ordinance and agreement with the city of Elwood, Indiana, it, for more than five years last past, operated its telephone system within the limits of such city and for such purpose had poles set along the streets thereof to which it attached and suspended wires and cables for use in the transmission of telephone messages to its patrons. During said time it maintained one of its poles on the inside of the curb on Twenty-second street, at a point where the alley intersects said street. About five years ago appellant carelessly and negligently attached a strong steel wire, one-fourth of an inch in diameter, to said pole about twenty-eight feet above the ground and extended said wire down to within about eighteen inches of the ground and parallel with the curb of said street and attached it to an iron guy rod one inch in diameter, which rod was securely anchored to a permanent fixture buried in the earth at a point immediately inside of the curb on said street, fifty-five feet from the bottom of the pole to which such wire was attached. Such guy rod extended out of the ground about eighteen inches and on the outer end of it there was a loop through which the end of said wire was drawn and bent back towards said pole to which it is attached, and then wrapped back on itself for several inches back from the end of said guy rod. Such connection of the guy rod with the guy wire was about eighteen inches from where said guy rod entered the ground and about two and one-half feet above the ground. In making the connection and splice of said wire and guy rod it was so made that it left the end of the wire projecting about one and one-half inches at right angles to the guy wire. Appellant has maintained said guy rod and guy wire in such condition continuously for the last five years. Said guy wire is drawn tightly from said pole to its attachment in the ground and its office and use is to support and sustain

said pole to which it is attached and prevent the heavy telephone wires attached thereto and extending in the opposite direction from causing such pole to sag. The construction and maintenance of the guy wire as aforesaid was and is a danger and a menace to the safety of persons and horses traveling along said street adjacent thereto, especially to horses that might become excited and frightened and run upon or against it and become entangled therewith. Said wire was unprotected and was not covered in any way to prevent persons or horses from running on or against it, and was so small that it would not attract the attention of a horse approaching it, especially if it were excited and frightened. Said wire extends from the top of the pole to which it is attached to its anchorage in the earth parallel to said curb and the roadway of said street, and is eighteen inches inside of the curb its entire length. On the —— day of March, 1910, appellee was and still is the owner of a valuable horse worth $250, and ordinarily gentle and tractable, which he was leading along and over said street, with reasonable and ordinary care, when he came opposite said guy wire so negligently and carelessly constructed and maintained as aforesaid, when said horse became excited and frightened at some steam escaping from an engine in a machine shop situated on the opposite side of said street from said guy wire and in its excitement and fear of said steam said horse shied and became unmanageable, and ran and jumped across said wire and became entangled therewith, and said wire so mangled, cut and tore said horse's legs and the flesh thereon that it was ruined and became utterly worthless. Appellee was exercising all reasonable and ordinary care in the management and control of said horse and was at all times, free of negligence or fault that in any way contributed to the injury of said horse.

There are also averments charging the city of Elwood with knowledge of the existence of said wire and its condition, but a demurrer by the city was sustained and appellee

refused to plead further and permitted judgment to go against him in its favor. The city is not made a party to the appeal, and its connection with the case need not be further noticed.

It is urged against the complaint that its averments show that the escape of the steam which frightened the horse and caused him to jump across the wire was an independent proximate cause of his injury, and that the presence of appellant's wire was only a condition and not a proximate cause. Among the cases relied on to support this contention appellant cites and quotes from the case of *P. H. & F. M. Roots Co.* v. *Meeker* (1905), 165 Ind. 132, 73 N. E. 253. This case has been overruled, on the point here involved, and both reason and authority are against appellant's contention. *King* v. *Inland Steel Co.* (1912), 177 Ind. 201, 96 N. E. 337, 97 N. E. 529; *Balzar* v. *Waring* (1911), 176 Ind. 585, 95 N. E. 257, 260; *Pittsburgh, etc., R. Co.* v. *Sudhoff* (1910), 173 Ind. 314, 90 N. E. 467, 472; *Cleveland, etc., R. Co.* v. *Clark* (1913), 51 Ind. App. 392, 97 N. E. 822, 829, 830 and cases there cited; *Louisville, etc., Lighting Co.* v. *Hynes* (1911), 47 Ind. App. 507, 91 N. E. 962; *Evansville, etc., R. Co.* v. *Allen* (1905), 34 Ind. App. 636, 73 N. E. 630.

It is also urged that the complaint shows appellee guilty of contributory negligence. This being a suit for damages for injury to personal property, the burden was on appellee to allege and prove that he was free from any negligence contributing to such injury. The complaint expressly avers that appellee, while leading his horse along such street was exercising reasonable ordinary care in its management and control, and that he was "at all times free of negligence or fault that in any way contributed to the injury of said horse." Nothing is shown by the specific averments, which negative or destroy the effect of this general allegation. Hence the complaint is sufficient in this respect. *Cleveland, etc., R. Co.* v.

*Clark, supra,* 827, 828; *Warbritton* v. *Demorett* (1891), 129 Ind. 346, 352, 27 N. E. 730, 28 N. E. 613.

It is also urged that no negligence is charged against the appellant, which can be said to be the proximate cause of the injury to the horse. It is difficult to determine from the averments of the complaint just what its theory is as to the negligence relied on. From the averments above indicated it will be observed that it is charged that appellant "carelessly and negligently attached the guy wire", etc., but no causal connection is shown between the manner of attaching such wire and the injury to appellee's horse. True, it is averred that, in running the wire through the loop at the end of the guy wire, and in making the connection and splice of the wire with the rod, the end of the wire was allowed to project at right angles to the guy wire, but it is not shown that such projection had anything to do with the injury to the horse, unless it can be inferred from the averments that the horse became entangled in the wire and it "so mangled, cut and tore * * * his legs and the flesh thereon that he was ruined and became utterly worthless." It would seem from these averments when considered together, that it is the size, *presence* and location of the unguarded guy wire, and *not its condition or manner of attachment* which appellee relies on as furnishing the only cause, with which appellant was connected, that could be said to be a proximate cause of the injury to appellee's horse, and we are persuaded that the complaint proceeds upon the theory that appellant's negligence consisted in so constructing and maintaining its guy wire that it ran along and parallel with the street inside the curb and so near thereto and connecting with a guy rod so close to the ground that it was possible for a horse to get entangled therewith, and that the maintaining of a guy wire of such size, in such place and position with reference to the street and without in any way protecting or covering the wire, was in and of itself negligence. It is questionable whether on this theory,

the averments are sufficient to show negligence when taken in connection with the other averments showing the purpose and necessity for such wire in connection with appellant's telephone system, but assuming without deciding that the general charge of negligence in the manner of the attachment of such wire and its maintenance in the manner alleged, are not overcome by the specific averments, we are confronted with the same question when we come to consider the sufficiency of the evidence to sustain the decision.

Ordinarily, negligence is a question of fact for the jury or the trial judge to determine from all the facts shown by the evidence affecting such question, but where the facts are undisputed and admit of but one inference, it then becomes the duty of this court to say whether the inference drawn by the jury, or in this case by the trial judge, was authorized by the law. *Western Union Tel. Co.* v. *McDaniel* (1885), 103 Ind. 294, 299, 2 N. E. 709; *Jenney Electric Mfg. Co.* v. *Flannery* (1913), *ante* 424; *Indianapolis Traction, etc., Co.* v. *Holtsclaw* (1908), 41 Ind. App. 520, 528, 82 N. E. 986; *Cleveland, etc., R. Co.* v. *Clark, supra,* 831; *Indiana, etc., Trac. Co.* v. *Sullivan* (1913), *ante* 239, 101 N. E. 401, 406.

There was evidence supporting the averment that appellant had permitted the end of the guy wire to project out or up at the point of its connection with the guy rod, but there was no evidence that in any way connected such projecting wire with the injury to the horse. The horse was injured in the hock joint and the point of contact with the wire was from two to four feet or more above the projecting end. There was some evidence that tended to show that the wire had been loose and sagged before the horse got his leg over it, but there was no evidence that showed or tended to show that the sagging of the wire had anything to do with causing the horse to get his leg over it, or with his becoming entangled therewith, or with his

extricating his leg after he got it over the wire, or that such sagging in any other way had anything to do with the horse's injury. So in its last analysis the only evidence which the trial court had before it which showed or tended to show a proximate cause for such injury with which appellant could be said to be connected, was that evidence which showed the size and presence of the unguarded guy wire in the place and position indicated. The manner and method of the placing and maintaining of this wire was undisputed. The wire was a quarter-inch wire attached at one end at or near the top of the pole to which appellant's telephone wires were suspended. From this point, which was about twenty-eight feet from the ground, it ran along and parallel with the street eighteen inches inside of the curb in a direct line north and connected with a guy rod anchored in the ground about 55 feet from the bottom of said pole. The point of connection between the guy wire and the guy rod was about eighteen inches above the surface of the ground.

As alleged in the complaint, the purpose of this guy wire was to support the pole which had suspended to it appellant's telephone lines. A guy wire or support of some kind was necessary. This is conceded by appellee, but it is insisted that the guy wire should have been attached to a stub pole high enough above ground that neither person nor animal would come in contact therewith. While the evidence shows that a stub pole may be, and frequently is, used for the purpose of attaching a guy wire thereto, it also shows that it then becomes necessary to secure the stub pole by an additional wire or rod anchored in the ground. There was expert evidence that the manner of attaching the guy wire adopted by appellant in this case was a usual and customary method and proper in all respects except in the matter of the projection of the wire before referred to, which had nothing to do with the injury to the horse. This evidence was undisputed. We think that the facts above indicated admit of but one inference, and hence the question

of appellant's negligence, under the authorities before cited, is one of law and not one of fact. This exact question, so far as we have been able to ascertain, has never been decided by either of the courts of appeal of this State. Cases, however, which we think analogous have been determined by such courts.

6. A distinction between the roadway and the sidewalk has been recognized and declared by the Supreme Court. In the case of *Weinstein* v. *City of Terre Haute* (1897), 147 Ind. 556, 46 N. E. 1004, the Supreme Court at page 559 said: "The statute, section 4398, Burns' R. S. 1894 (3361, R. S. 1881) recognizes sidewalks even upon ordinary highways, and makes it unlawful to ride or drive, not only upon a sidewalk of any town or village, but also 'upon any similar sidewalk for the use of foot-passengers by the side of any public highway in this State, unless in the necessary act of crossing the same.' It is only reasonable that those who drive along a street in carriages or other vehicles should not deprive travelers on foot from the use of a narrow pathway on each side, where they may walk in safety from teams, and free from the mud of the roadway; and six feet and a half on each side of a fifty-foot street does not seem too great a space for such a use. And if such a space is not too great for the use of foot passengers, *surely it cannot be unlawful to set a hitching post at the edge of such a walk.*" (Our italics.) In the case of *Lostutter* v. *City of Aurora* (1891), 126 Ind. 436, 26 N. E. 184, 12 L. R. A. 259, the Supreme Court held that a municipal corporation was not guilty of maintaining a nuisance where it had constructed a platform around the mound of a well dug in the street and caused a pump to be placed in it for the use of the public. In the case of *City of Vincennes* v. *Thuis* (1902), 28 Ind. App. 523, 63 N. E. 315, this court held that the proper place for a public water hydrant was between the sidewalk and the roadway. The right of a telephone system to occupy the streets of a city

as a proper street use has been expressly held by our Supreme Court and the courts of many other jurisdictions. *Magee* v. *Overshiner* (1898), 150 Ind. 127, 137, 49 N. E. 951, 40 L. R. A. 370, 65 Am. St. 358, and cases cited. This right and its importance and benefit to the citizens of the numerous cities of our State has been expressly recognized by the legislature of our State, as evidenced by subd. 2, §8696 Burns 1908, Acts 1905 p. 219, §93, which provides that cities, by their proper authorities, may grant the use of their streets to telephone companies for the purpose of erecting and maintaining their poles and lines in and along such streets. Of course, this use must be and always is granted with reference to the primary use of the street for passage of people and vehicles and should not obstruct or unnecessarily interfere with such primary use. It seems clear that every city should have a right "to determine what part of the nominal highway shall be devoted to the various purposes of passage, and upon such a subject the municipal discretion must prevail." *Herndon* v. *Salt Lake City* (1908), 34 Utah 65, 95 Pac. 646, 650, 131 Am. St. 827 and authorities there cited.

Appellant maintained the poles and lines in question, under the authority of an ordinance and agreement with the city of Elwood. The guy wire, here involved, was not in that part of the street which such city had determined should be devoted to the passage of horses and vehicles, and hence could not be said to be an obstruction therein. On the contrary, it was located in that part of the street recognized by the above authorities as being the proper place for its location. We think it must follow from the authorities cited that the evidence in this case fails to show appellant guilty of any actionable negligence that can be said to have been the proximate cause of the injury to appellee's horse and that for this reason the motion for a new trial should have been sustained.

Judgment reversed with instructions to the trial court

to sustain the motion for new trial, with leave to appellee to amend his complaint, if he so desires, and for such other proceedings as may be consistent with this opinion.

NOTE.—Reported in 102 N. E. 163. See, also, under (1) 29 Cyc. 572; (2) 29 Cyc. 575, 601; (3) 29 Cyc. 578; (4) 29 Cyc. 629; (5) 29 Cyc. 629; 37 Cyc. 1647; (6) 37 Cyc. 1617; (7) 28 Cyc. 848, 866; (8) 37 Cyc. 1642, 1645. As to the burden of proof of contributory negligence, see 28 Am. Rep. 563. As to contributory negligence as a question for the jury, see 3 Am. St. 849. As to the law in relation to poles and wires of telegraph and telephone companies in streets and highways, see 28 Am. St. 229. On the question of the liability for injury or death of traveler coming·in· contact with electric wire in highway, see 31 L. R. A. 566; 22 L. R. A. (N. S.) 1169.