HUFFMAN ET AL. *v.* NEWLEE ET AL.

[No. 23,320. Filed October 28, 1919. Rehearing denied January 13, 1920.]

1. DRAINS.—*Repair.—Change from Original Specifications.—Statute.*—Under §6174 Burns 1914, Acts 1913 p. 152, the power of the tribunal ordering the repair of an existing drain is not confined to the restoring of the drain to its original dimensions, but such tribunal has power, under a proper petition, to order any changes that would render the work efficient to perform the drainage originally intended; and it is impossible for a court to determine when changes and extensions cease to be legitimate repairs and become new and independent work, so long as any part of the original ditch is utilized. p. 20.

2. DRAINS. — *Necessity of Changes. — Determination.* — Whether changes and extensions asked for in a petition to repair an existing drain are reasonably necessary to accomplish the purpose for which the drain as originally intended, is a question of fact to be determined from the facts presented in the particular case. p. 20.

3. DRAINS.—*Repair.—Jurisdiction.*—Since the enactment of §6174 Burns 1914, Acts 1913 p. 152, in proceedings for the repair or reconstruction of an established drain so as to render it efficient to accomplish the drainage for which it was designed and intended, the tribunal which established the drain has exclusive original jurisdiction. p. 22.

4. DRAINS.—*Construction Over Course of Old.—Nature of Proceedings.*—Where proposed alterations, extensions and changes to an established drain are intended to drain new areas of land which the original drain was not designed or intended to drain, either directly or indirectly, the proceeding is not one for repairs, even though it involves the existing drain, and such improvement can be ordered only by a tribunal having jurisdiction to establish original drains in a proceeding brought for that purpose. pp. 23, 24.

5. DRAINS.—*Repair.—Character of Original Drain.*—Whether proposed changes, alterations and extensions are necessary in order to make an established drain perform the drainage for which it was originally designed, cannot be determined from the contemplated changes and alterations alone; such fact involves also a consideration of the character, purpose, scope and extent of the established drainage. p. 25.

6. DRAINS.—*Repair.—Necessity of Changes.—Burden of Proof.*—In a proceeding under §6174 Burns 1914, Acts 1913 p. 152, the burden is on the petitioners to prove that changes, alterations and extensions petitioned for are necessary in order to make the established drain perform the drainage for which it was originally designed and intended. p. 25.

7. DRAINS.—*Repair.—Necessity of Changes.—Jurisdiction.—Sufficiency of Pleading.*—A general allegation in a drainage petition that the changes, alterations and extensions to an existing drain as proposed therein are necessary to make it capable of performing the drainage for which it was originally designed and intended, shows the proceeding to be one for the repair of an existing drain as authorized by §6174 Burns 1914, Acts 1913 p. 152, and is sufficient to show jurisdiction of the subject-matter as against a demurrer, unless the petition contains specific allegations that negative such general allegation. p. 25.

8. PLEADING.—*Drainage Petition.—Demurrer.—Motion to Strike.*—The want of jurisdiction of the court over the subject-matter of a proceeding for the change, alteration and extension of an existing drain, under §6174 Burns 1914, Acts 1914 p. 152, was properly raised by demurrer under §344 Burns 1914, Acts 1915 p. 415; a motion to strike out the petition could not perform the office of a demurrer, and was therefore properly overruled. p. 26.

9. DRAINS.—*Repair.—Necessity of Changes.—Findings.—Conclusiveness.*—The court cannot, as a matter of law, fix any definite limit as to the nature and extent of extensions and changes that may be made under §6174 Burns 1914, Acts 1913 p. 152, so long as they are necessary to make an existing drain efficient for the purpose for which it was originally intended; hence, where the trial court made a finding of the necessity of proposed extensions and changes, such finding is conclusive on appeal if there is evidence in the record to support it. p. 26.

10. DRAINS.—*Repair.—Appeal from Commissioners.—Jurisdiction.*—In an appeal to the trial court of a proceeding for the change, alteration and extension of an existing drain, under §6174 Burns 1914, Acts 1913 p. 152, the court had the same jurisdiction to entertain an amended petition as that possessed by the board of commissioners; and, where the amended petition did not materially differ from the original, except as to the particularity of the description of the proposed changes, there was no error in overruling a demurrer thereto or a motion to strike. p. 28.

11. DRAINS. — *Repair. — Remonstrance. — Sufficiency. — Burden of Proof.*—In a proceeding for the repair of an existing drain, involving alterations, extensions and changes in its course, under

§6174 Burns 1914, Acts 1913 p. 152, a remonstrance to the petition, under §6142 Burns 1914, Acts 1907 p. 508, §3, cannot prevail unless it is shown that it bears the names of two-thirds of the resident owners of the lands benefited or damaged, whether named in the petition or not, and where the number of such resident owners was not shown, the remonstrance was properly overruled, since the remonstrants had the burden of making the proof on such issue. p. 29.

12. DRAINS.—*Reopening Case.—Introduction of Evidence.*—The refusal to reopen the case to permit the remonstrants to introduce evidence showing that certain parties using their initials in signing the remonstrance were the same parties who signed the petition using their full names, was not error where the court would still have been unable to determine the whole number of resident owners whose lands would be affected by the proposed improvement in order to determine whether two-thirds of such owners signed the remonstrance as required by §6142 Burns 1914, Acts 1907 p. 508, §3. p. 30.

From Delaware Superior Court; *Robert M. Van-Atta,* Judge.

Proceedings by Harriett C. Newlee and others for the repair of a public drain, in which John C. Huffman and others filed a remonstrance. From a judgment ordering the construction of the proposed improvement, the remonstrants appeal. *Affirmed.*

*George H. Koons* and *George H. Koons, Jr.,* for appellants.

*White & Haymond* and *Omar G. Weir,* for appellees.

LAIRY, C. J.—This is an appeal from a final order made by the Superior Court of Delaware county in a proceeding for the repair of a drain known as "Schroyer ditch No. 110." This ditch is located entirely within the county of Delaware, and was originally located and constructed under an order of the board of commissioners of that county. The Schroyer

ditch as originally established and constructed emptied into White river on the north side thereof, and drained lands located to the north of that river. It was an open ditch throughout its entire length of 289 stations of 100 feet each following the general course of a natural watercourse known as "Mud creek." After the construction of the Schroyer ditch, the Delaware Circuit Court, under a petition filed therein, established what is known as the "Christopher Brown ditch" for the purpose of draining that part of the Mud creek basin which lies above the source of the Schroyer ditch. The outlet of the drainage constructed under this petition is in Mud creek at a point ten feet east and forty feet south of the source of the Schroyer ditch, and the water carried thereby finds its outlet through the latter ditch, which, at the time of its construction as shown by the special findings of the trial court, was intended to be of sufficient capacity to accommodate such drainage. The Brown ditch at the outlet is fourteen inches lower than the bottom of the Schroyer ditch at its source. It consists of two tile drains, one twenty inches and the other sixteen inches in diameter having several lateral drains or tributaries. One of these, known as "tributary No. 6," which is a tile ditch ten or twelve inches in diameter, and another tile drain of about the same capacity, find an outlet into Mud creek at or near the outlet of the Brown ditch. The fall of the tile drainage just mentioned was much greater than that of the Schroyer ditch, and the volume of water carried thereby greatly exceeded the capacity of the latter ditch which afforded the only means of outlet. As a consequence, the lands adjacent to the Schroyer ditch were overflowed by water from the tile drainage above and were there-

by rendered unproductive. To remedy this situation, a petition was filed before the board of commissioners of Delaware county for the repair of the Schroyer ditch. To this petition a remonstrance was filed purporting to be signed by two-thirds of the owners of lands affected by benefits or damages, which remonstrance was sustained and the petition dismissed. From the order dismissing the petition, the petitioners appealed to the Delaware Circuit Court, from which the case was transferred to the Delaware Superior Court, where an amended petition was filed. The remonstrance filed before the board was refiled to the amended petition and, after a hearing thereon, the same was overruled, and such further proceedings were taken and had in that court as resulted in an order establishing the proposed work and ordering it to be constructed. From the order so made this appeal is taken.

The petition filed before the board of commissioners described the Schroyer ditch as originally constructed, and alleged that said ditch was out of repair, being filled at places with dirt and rubbish, and that said ditch as originally constructed never had been, and was not at the time the petition was filed, of sufficient capacity to properly accomplish the drainage for which it was designed and intended. It further alleged that said ditch could be made sufficient to perform the drainage for which it was designed and intended by making the same wider and deeper throughout its entire length, and by extending the length of said drain a proper distance to procure the proper fall and proper outlet, and by changing the course thereof, and by tiling and covering said drain for a distance of sixty rods from its source.

The amended petition filed in the superior court described the Schroyer ditch as originally constructed and also the tile drainage subsequently constructed, which finds its outlet through the Schroyer ditch. It alleged that the Schroyer ditch was inadequate and had been always inadequate to furnish the drainage for which it was intended, and described the condition of the drainage and the adjacent land showing the particular defects which rendered the existing ditch inadequate to accomplish the drainage for which it was intended. It also set out with more particularity than the original petition the changes and alterations necessary in order that the Schroyer ditch might accomplish the drainage for which it was designed and intended. It was alleged that the Schroyer ditch should be extended so as to connect with the outlet of the Brown ditch, and that tile should be extended down the Schroyer ditch a distance of about sixty rods from its source; that the open part of the Schroyer ditch should be deepened and widened from its source to a point about 2,100 feet from its outlet, at which point the course should be changed by abandoning the channel of the old ditch between that point and the outlet and by the construction of an open channel connecting the Schroyer ditch with White river, which is alleged to be only about 160 feet distant from the Schroyer ditch at the point mentioned. It was further alleged that it was necessary to furnish a proper outlet and to provide sufficient fall for the drainage contemplated; that the ditch should be extended down White river for the distance of approximately one mile from the proposed outlet of the Schroyer ditch, and that the same should be constructed by a dredge to a width of approximately thirty feet.

Appellants who were remonstrants before the board of commissioners filed a motion for an order to strike out and reject the amended petition for the reason that the proposed extensions, alterations, and changes in the course and means of construction, as shown by the facts stated in the amended petition, were not such legitimate repairs and improvements of the Schroyer ditch as could be ordered and made under the provisions of §6174 Burns 1914, Acts 1913 p. 152. The motion was based on the proposition that the exclusive jurisdiction to order repairs of the Schroyer ditch was vested in the board of commissioners; that this jurisdiction was invoked by the original petition, filed before that body; and the amended petition, as shown by the facts stated therein, contemplates the construction of a new and independent drain, thus invoking the original jurisdiction of the superior court under the provisions of §6141 Burns 1914, Acts 1907 p. 508, §2.

Under former statutes on the subject of the repair of drains, it has been generally agreed that the repairs contemplated consisted in the restoration of the ditch to its original specifications; and that, in case it was necessary to change the course or to lengthen the ditch or to deepen or widen the channel or to depart from the original specifications in any other way, it was necessary to proceed under some statute providing for the location and construction of original drains. The statute under which this proceeding was brought differs from former statutes providing for the repair of public drains in that it expressly authorizes a departure from the specifications of the ditch as originally constructed so as to make the work sufficient to accomplish the drainage for which it was designed

and intended. In order to accomplish such purpose, it is provided that the course of such ditch may be changed or its length extended. It is also provided that an open ditch may be converted into a tile ditch, or that a tile ditch may be converted into an open ditch, or that the capacity of a tile ditch may be changed by increasing the size or the number of the tile, or that any other change may be made which would be of public utility. From an examination of this statute, it is clear that the legislature intended that the power of the tribunal ordering the repair of an existing drain should not be confined to the restoring of the drain to its original dimensions as shown by the specifications; but that such tribunal, under a proper petition, should have power to order any such changes as would render the work efficient in performing the drainage which the original drain was intended to accomplish. Any change from the original specifications calls for new construction. Whether the new construction be great or small in extent, the statute confers jurisdiction to order it so long as it appears to be necessary to accomplish the drainage originally designed and intended. The statute fixes no other limitation on the extent to which a ditch may be changed or extended in the process of repair, and the court cannot fix such a limitation as a matter of law. Under a repair statute authorizing alterations and extensions of an old ditch in disregard of the original specifications, it is impossible for a court, in a particular case, to determine when changes and extensions cease to be legitimate repairs and become a new and independent work of drainage, so long as the original ditch or any part of it is utilized. It seems to have been the purpose of the legislature to

place no limitation on the alterations and extensions that can be ordered in the repair of an old ditch so long as they are necessary to make such ditch adequate to accomplish the drainage originally intended. As to whether such changes and extensions are reasonably necessary to accomplish such purpose presents a question of fact to be decided as other such questions are determined from the facts presented in each case.

While the statute under consideration designates the work thereby authorized as repair of a ditch or drain, the work actually authorized by the provisions of the act constitutes a reconstruction of the former ditch with such changes and extensions as will make it efficient to accomplish the drainage designed and intended by the original drain. Prior to the enactment of this statute it was held that the same result would be reached by a petition for a new drain following the course of an existing established ditch. *Meranda* v. *Spurlin* (1885), 100 Ind. 380; *Rogers* v. *Venis* (1894), 137 Ind. 221, 36 N. E. 841; *Sample* v. *Carroll* (1892), 132 Ind. 496, 32 N. E. 220.

Section 6174, *supra,* provides that the proceeding for the repair of an established ditch shall be filed before the tribunal in which it was established.

3. Since the enactment of this section, the court has held that, in case the proceeding is one for the repair or reconstruction of an established ditch so as to render it efficient to accomplish the drainage for which it was designed and intended, the tribunal which established the ditch has exclusive original jurisdiction of a proceeding filed for that purpose; and that such a proceeding cannot be maintained in any other tribunal under a statute providing for the

location and construction of original drains. *Croxton*
v. *Fair* (1913), 181 Ind. 361, 104 N. E. 643; *Shields* v.
*Pyles* (1913), 180 Ind. 71, 99 N. E. 742; *Stockton* v.
*Pancoast* (1912), 178 Ind. 203, 98 N. E. 122.

It has been held that §6174, *supra,* does not super-
sede §6141, *supra,* so as to warrant the construction
of a new and original ditch over the line of an
established drain by proceedings instituted un-
der the former section. *Hauschild* v. *Roth*
(1913), 181 Ind. 183, 104 N. E. 11. The court has also
held that a proceeding cannot be maintained under
§6141, *supra,* authorizing the location and construc-
tion of original drains where the purpose to be accom-
plished is to enlarge, extend, tile, or otherwise alter
and improve an existing drain so as to make it efficient
in accomplishing the drainage for which it was origi-
nally designed and intended. *Woodring* v. *McCaslin*
(1914), 182 Ind. 134, 104 N. E. 759. No distinction
can be drawn between the two proceedings on the
ground that an existing established drain is involved
in one and not in the other because a new ditch may
be established over and along the line of an existing
established drain under §6141, *supra,* and under
§6174, *supra,* an existing established drain may be
extended, enlarged, tiled, or otherwise changed and
improved so as to make it capable of accomplishing
the drainage for which it was originally designed and
intended. The cases already cited sustain the propo-
sitions just stated, and also clearly hold that a distinc-
tion must be observed between proceedings for the
location and construction of original drains under
statutes authorizing proceedings of that nature and
proceedings instituted for the purpose of enlarging,
extending and otherwise changing and improving an

existing established drain. The distinction is important because it determines the jurisdiction in which the proceeding must be brought. If the proceeding is one to establish an original drain, it may be brought in any tribunal having jurisdiction for such a proceeding, but, if it is one to repair an existing drain, it must be brought in the tribunal in which the drain was originally established. The difficulty in making the distinction arises only in cases where an existing established drain is involved. Where an existing drain is involved and the purpose of the proceeding is to extend its length, to enlarge it, to change its course, to tile it, or to make other material changes therein, the court may be called on to determine its jurisdiction by deciding whether the contemplated work constitutes a new ditch, or whether it amounts only to such extensions, alterations and improvements of an established ditch as can be legitimately accomplished under the provisions of §6174, *supra.* The decision of this question is decisive of the jurisdiction of the court where the jurisdiction is raised, and in deciding the question the court is required to make the distinction suggested.

In drawing the distinction between the two proceedings under the circumstances suggested, the court is required to determine whether the proposed

4.    alterations, extensions, and changes of course to be made in the established ditch are necessary in order to make it capable of performing the drianage for which it was originally designed and intended. If that fact is found in the affirmative, the proceeding is one for repair which must be brought under the provisions of §6174, *supra,* in the tribunal which established the ditch. If the fact is found in

the negative, and if it appears that the proposed work
is intended to drain new areas of land which the orig-
inal ditch was not designed or intended to drain either
directly or indirectly, by furnishing a means of outlet,
then the proceeding is not one for repairs, even
though it involves an existing drain. Such a work
can be ordered only by a tribunal having jurisdiction
to establish original drains in a proceeding brought
for that purpose. This fact is jurisdictional and
must be determined sometime in the course of the
proceeding. When the fact is decided adversely to
the petitioner, the petition should be dismissed for
want of jurisdiction.

The fact that the proposed changes, alterations and
extensions are necessary in order to make the estab-
lished ditch perform the drainage for which it
was originally designed and intended is one
which cannot be determined from a considera-
tion of the contemplated alterations and exten-
sions alone. The determination of such fact
involves, also, a consideration of the character
and purpose of the established drain and the scope
and extent of the drainage which it was originally
designed and intended to accomplish. In a proceeding
instituted under §6174, *supra*, the fact as stated must
be alleged in the petition, and, when so alleged, the
proper court acquires jurisdiction to proceed. The
burden is on the petitioner to establish the fact so
alleged by evidence, and a failure on his part to obtain
a finding of such fact in his favor defeats the petition.

As heretofore stated, the motion to strike out was
addressed to the amended petition. After the motion
to strike out was overruled, a demurrer for
want of jurisdiction was filed and overruled.
In passing on the demurrer the court could con-

sider only the facts alleged in the petition. The petition alleges in general terms that the extensions, alterations and changes of course of the existing ditch are necessary in order to make it capable of performing the drainage for which it was originally designed and intended. This general allegation gives character to the proceeding and shows it to be one for the repair and improvement of an existing drain as authorized by §6174, *supra*. Unless the specific allegations in respect to the character and extent of the proposed extensions, alterations and changes of course were such as to be clearly repugnant thereto and show that the general allegation is untrue, the general allegation is sufficient to show jurisdiction in the court over the subject-matter of the proceeding when tested by a demurrer. *Warbritton* v. *Demorett* (1891), 129 Ind. 346, 27 N. E. 730, 28 N. E. 613; *Delaware, etc., Tel. Co.* v. *Fleming* (1913), 53 Ind. App. 555, 102 N. E. 163; *Cleveland, etc., R. Co.* v. *Clark* (1912), 51 Ind. App. 392, 97 N. E. 822. The want of jurisdiction in the court over the subject-matter of the proceeding was properly raised by demurrer under §344 Burns 1914, Acts 1911 p. 415. The motion to strike out could not perform the office of the demurrer in this regard, and was therefore properly overruled. *Guthrie* v. *Howland* (1904), 164 Ind. 214, 73 N. E. 259; *Moorhouse* v. *Kunkalman* (1911), 177 Ind. 471, 96 N. E. 600.

The trial court did not err in overruling the demurrer to the amended complaint. It was in no position to say, as a matter of law, from a consideration of the facts shown by the specific allegations, that the general allegation was untrue. If, from a consideration of the character and extent of

the proposed extensions and alterations of an existing drain as disclosed by the petition, the courts were to attempt to determine, as a matter of law, that such extensions, alterations and improvements were, or were not, necessary in order to make the pre-existing drain capable of performing the drainage for which it was originally designed and intended, they would soon become involved in confusion. Who can say, as a matter of law, how material and how extensive such changes must be before they cease to be legitimate repairs and improvements and become the construction of a new and distinct drain? This court has held that the extension of a ditch for a distance of 200 feet, in order to procure a proper outlet, may be justified as legitimate repair. If that is true, could one be extended 500 or 1,000 feet, if necessary, to accomplish the same result? If so, can an extension of an existing ditch down a river for a distance of more than two miles for the purpose of securing suitable fall, as contemplated in this proceeding, be justified as legitimate repair of an existing drain? It is apparent that the court cannot, as a matter of law, fix any definite limit as to the nature and extent of the extensions and changes which may be made in existing drains under the authority of §6174, *supra,* so long as they are necessary to make the ditch efficient in accomplishing the drainage for which it was designed and intended. The question of necessity in a case of this kind cannot ordinarily be one of law, but is generally a question of fact to be determined by the trial court as such from a consideration of the evidence bearing on that question. In this case the trial court, after hearing the evidence, determined the question adversely to appellants.

The court in this case made a special finding in which all of the essential facts are found in favor of the petitioners, and, as there is evidence in the record to sustain all of the facts so found, this court is concluded by the finding.

The special finding shows that, by extending the Schroyer ditch down White river for the purpose of providing an outlet, the improvement passes the outlet of Prairie creek which drains a large area of land located on the south side of White river, while the lands drained by the Schroyer ditch are all located on the north side of the river. The finding shows that the proposed improvement will furnish a better outlet for Prairie creek and will incidentally benefit the lands drained thereby, none of which were drained or affected by the original Schroyer ditch; but the court further finds that the proposed improvement below the mouth of Prairie creek was not made deeper or extended in order to accommodate water flowing from Prairie creek, and that the entire work of extension is necessary in order to procure sufficient outlet for Schroyer ditch No. 110, so as to make it sufficient to drain the territory for which it was originally designed and intended. This finding does not show that the extension down White river for the purpose of obtaining an outlet was not necessary in order to make the original ditch efficient to accomplish the drainage for which it was originally intended, but it does affirmatively show the contrary.

Under the statute cited, the board of commissioners had jurisdiction to entertain a petition for the repair of an existing drain involving alterations, extensions and changes in its course. The amended petition filed in the superior court of

Delaware county did not differ materially from the original petition filed before the board, except that it stated with particularity the character of the changes and extensions contemplated. If the amended petition had been filed before the board in lieu of the original, that body would have had jurisdiction to entertain it, and the court trying the appeal had the same jurisdiction possessed by the board of commissioners. The court did not err in overruling either appellants' demurrer to the amended petition or their motion to strike it out.

As heretofore stated, the remonstrance filed before the board was refiled to the amended petition in the superior court, and after a hearing the same was overruled. A motion for a new trial on the issues presented by the remonstrance was filed and overruled, and this action of the trial court is assigned as error.

The provisions of §3 of the Drainage Act on the subject of remonstrance, which, by the provisions of §19 of the same act as amended, is made applicable to a proceeding of this kind, reads as follows: "*Provided,* that if within twenty (20) days, exclusive of Sundays, from the day set for the docketing of such petition, two-thirds in number of the landowners named as such in such petition, or who may be affected by any assessment or damages, resident in the county or counties where the lands affected are situated, shall remonstrate in writing against the construction of such drain or ditch, such petition shall be dismissed at the cost of the petitioners." §6142 Burns 1914, Acts 1907 p. 508, §3.

A remonstrance filed under this provision of the statute cannot prevail against the petition, unless it is made to appear to the court that the remonstrance

bears the names of two-thirds of the owners of land residing in the county or counties where the lands affected are located whose lands are affected either as benefited or damaged, whether named in the petition or not. To establish this fact it is necessary to prove the total number of such landowners whose lands are so affected, and also the total number of such landowners whose names appear on the remonstrance. The burden of making such proof rests on the remonstrators.

The petition in this case named 246 persons as the owners of lands which would be affected by the proposed improvement. There was proof that the remonstrance bore the names of 212 persons whose lands were affected, many of whom were not named in the petition, and the evidence also disclosed that there were many landowners, resident in the county, whose lands would be affected by the proposed improvement whose names did not appear either on the remonstrance or in the petition. There being no evidence to show the number of such persons, the court could not determine the total number of landowners resident in the county whose lands would be affected by the proposed improvement. The remonstrance was properly overruled because the evidence failed to show that it was signed by the required number of qualified landowners.

After the evidence was closed and before the argument was concluded, appellants filed a motion supported by affidavit for an order to reopen the evidence and to admit additional proof on behalf of appellants. The affidavit showed that certain persons who had used the initials of their first names in signing the remonstrance were the same

persons whose full names appeared in the petition as the owners of lands affected. The remonstrators offered to prove this fact, as to the several persons so signing, by witnesses present in court. This motion was overruled. While it is generally true that a trial court should exercise its discretion liberally in reopening the evidence in a case to admit additional proof in the interest of justice, the court committed no error in its ruling in the present instance. If the offered evidence had been admitted, the court would still have been unable to find the total number of persons resident in the county whose lands would be affected by the proposed improvement, and its ruling could not have been different from that made.

The court has examined the other questions presented by the record, and it is of the opinion that what has been said is sufficient to indicate that no reversible error was committed by the other rulings of which complaint is made and which are not specifically discussed.

Judgment affirmed.