ROCKEY ET AL. v. HERSHMAN ET AL.

[No. 23,636.    Filed March 6, 1923.    Rehearing denied May ¹.
1923.]

1. APPEAL.—Record.—Omission of Immaterial Matters.—On appeal from a drainage proceeding, in which the first report of the drainage commissioners was set aside and the matter re-referred to said commissioners, it was proper to omit from the transcript such matters as were superseded by such re-reference.    p. 174.

2. APPEAL.—Assignment of Error.—Appellant's Complaint.— The assignment of errors is the appellant's complaint, presenting questions of law only, to be determined from the record.    p. 175.

3. APPEAL.—Assignment of Errors.—Full Names of Parties Required.—Exception.—Drainage Proceedings.—A rule of the Supreme Court (No. 6) requires the assignment of errors to contain, either in the title or in the body thereof, the full names of all the parties to the judgment, and this requirement is jurisdictional, but the drainage statute has been construed to modify the rule in drainage cases, and if the names in the assignment of errors are the same as the parties thereto used in their own pleadings, or as given in the judgment, the assignment, in that regard, will be deemed sufficient.    p. 175.

4. DRAINS.—Appeal.—Assignment of Errors.—Names of Parties. —Statute.—In an appeal from the judgment in a drainage proceeding, the fact that some of the coparties are not properly named in the assignment of errors is immaterial, since the statute provides that "all parties [thereto] shall take notice of and be bound by such appeal".    (Acts 1917 p. 292, §6143 Burns' Supp. 1921).    p. 176.

5. APPEAL.—Term-time Appeal by Part of Parties.—Statute.— Section 675 Burns 1914, Acts 1895 p. 179, authorizes "any number of coparties against whom a judgment has been taken"

to prosecute a term-time appeal from such judgment without making other coparties not appealing parties to the appeal, and provides that they "shall be bound by the judgment on appeal to the same extent as if they had been made parties", although they are not named as appellants or appellees in the assignment of errors. p. 176.

6. DRAINS.—*Appeal.—Assignment of Errors.—Names of Parties. —Discrepancy.*—In an appeal from the judgment in a drainage proceeding where Albert Osborn remonstrated, filed a motion for a new trial, and judgment was rendered against him by that name, but the court ordered notice to Albert S. Osborn and the name Albert S. Osborn appears in the assignment of errors, the record justifies the conclusion that Albert S. Osborn was the person against whom judgment was taken; and where Rosa E. Rockey filed a remonstrance and that name appears in the assignment of errors, but the judgment was against Rose E. Rockey, it will be assumed that they are one and the same person, and the assignment of errors, as to each of them, held sufficient. p. 177.

7. APPEAL.—*Review.—Decisions Reviewable. — Judgment for Costs.*—An appeal will not be entertained where the only judgment against appellant is a judgment for costs. p. 177.

8. APPEAL.—*Right to Appeal.—Parties to Judgment Only.*—It is only persons who are parties to the judgment, or their representatives, who can appeal from such judgment, and where a stranger to the judgment has been joined on appeal, the appeal, as to him, may be dismissed, or his name may be treated as surplusage with respect to those who are proper parties thereto. p. 178.

9. APPEAL.—*Parties.—Term-time Appeal.—Statute.*—Under §675 Burns 1914, providing that "any number of coparties against whom a judgment has been taken" may prosecute a term-time appeal without joining their coparties, the failure of a judgment defendant in a drainage proceeding to join in the appeal would not affect the right of his coparties to the judgment to take their appeal. p. 178.

10. APPEAL.—*Parties to Appeal.—Joinder.—Necessity.*—A person who is not a party to the judgment appealed from, and who is not shown to have any interest affected by the appeal. need not be joined as a party to the appeal. p. 178.

11. DRAINS.—*Appeal.—Parties Thereto.*—Where landowners are brought into a drainage proceeding by the report of the drainage commissioners, and do not file remonstrances, but become parties to the judgment only by the approval of the commissioners' report and the confirmation of the assessments against them, they are not necessary parties to an appeal by remon-

strators, and the omission of one or all of them would not pre-
clude the court from assuming jurisdiction and passing on the
merits of the appeal.   p. 178.

12. DRAINS.—*Appeal.—Appeal Bond.—Signing by Appellants.*—
In an appeal from the order of the court establishing a drain
and confirming the assessments, the appeal having been prayed
by all the remonstrators, an appeal bond conditioned that two
named remonstrators and others designated by "*et al.*" will
prosecute the appeal and abide by and pay the judgment which
may be rendered or affirmed against "them", includes the other
remonstrators who had prayed an appeal, (*Goodrich v. Stang-
land,* 155 Ind. 279, distinguished).   p. 179.

13. APPEAL.—*Appeal Bond.—Signatures of All Appellants Un-
necessary.*—An appeal bond is valid and effective although all
the appellants did not join therein.   p. 179.

14. APPEAL.—*Appeal Bond.—Defective.—Designating Appel-
lants by "et al."*—An appeal bond which does not name all of
the appellants, but designates some of them by "*et al.*" is de-
fective, but may be so worded as to inure to the benefit of the
unnamed appellants, (*Goodrich v. Stangland,* 155 Ind. 279, dis-
tinguished).   p. 179.

15. APPEAL.—*Bill of Exceptions.—Authenticating the Evidence.
—Drainage Proceedings.*—In a drainage proceeding, a bill of
exceptions containing the evidence sufficiently authenticated the
evidence where the court reporter certified, at the close of the
evidence, that "this was all the evidence given in the hearing
of this case", and the court's certificate to the bill recited that
the "foregoing typewritten transcript of the evidence so taken
and reported as aforesaid contains all of the evidence given in
the trial of this cause on the remonstrance of Joseph Rockey et
al." to the report of the drainage commissioners.   p. 181.

16. EXCEPTIONS, BILL OF.—*Tendering to Judge.—Extension of
Time.—Notice.—Waiver.—Statute.*—The notice of an applica-
tion for an extension of time for tendering a bill of exceptions,
required by §661 Burns 1914, may be waived, and is waived by
all persons who appear at the hearing on the application.   p. 181.

17. EXCEPTIONS, BILL OF.—*Tendering to Judge.—Extension of
Time.—Notice.—Drainage Proceedings.*—Although §661 Burns
1914, providing for an extension of the time for tendering a
bill of exceptions, requires notice of the application to be given
to adverse parties, such notice is not necessary to parties to a
drainage proceeding who are neither petitioners nor remonstra-
tors, as they are not necessary parties to an appeal therefrom.
p. 181.

18. DRAINS.—*Cleaning, Repair and Extension.—Repeal of
Statute.*—Acts 1915 p. 417, relating to the cleaning, repair and

extension of drains, and conferring exclusive jurisdiction on boards of county commissioners, was repealed by Acts 1917 p. 384, §10.  p. 182.

19. DRAINS.—*Cleaning, Repair and Extension.—Jurisdiction.—Statute.*—Section 19 of the 1907 drainage act, as amended in 1913 (Acts 1913 p. 152, §6174 Burns 1914), confers on the circuit and superior courts jurisdiction of proceedings to clean, repair or extend existing drains, and expressly provides that the procedure in such cases shall conform to the requirements of §§3 and 4 Acts 1907 p. 508, §§6142 and 6143 Burns 1914, the first of which was superseded by Acts 1920 p. 108, §6142 Burns' Supp. 1921, and the second was amended by Acts 1917 p. 292, §6143 Burns' Supp. 1921.  p. 182.

20. DRAINS.—*Evidence.—Report of Drainage Commissioners.—Prima Facie Evidence.*—The report of the drainage commissioners, being a part of the record, is deemed to be in evidence, and ordinarily is to be considered by the court as *prima facie* proof of the facts therein stated, and where the report shows that the "costs, damages and expenses" of constructing the drain will be less than the total benefits to the lands affected, stating the aggregate expense and the total benefits, and the court has overruled the remonstrances and adopted the report, the contention that there was no evidence from which the court could find the cost of the proposed work and the aggregate benefits is not sustained.  p. 182.

21. DRAINS.—*Procedure.—Manner of Doing Work.—Direction by Court.*—The manner of doing the work, the size of tile to be used, and other similar matters, are to be determined exclusively by the drainage commissioners, and their judgment thereon is conclusive, not only on the parties but on the court, but a direction by the court to "perform the duties of their office" is unobjectionable.  p. 184.

22. DRAINS.—*Repair of Drain.—Apportionment of Expense.—Statute.*—Under §19 of the drainage act of 1907, as amended in 1913, Acts 1913 p. 152, §6174 Burns 1914, the expense of doing the work is to be apportioned according to the benefits derived therefrom, and should be assessed only against such tracts of land as are benefited thereby, regardless of the lands assessed for the construction of the original drain.  p. 185.

23. DRAINS.—*Repair of Drain.—Extension of Drain Unauthorized.*—In proceedings to repair a drain, relief by way of ordering an extension of the original drain so as to drain certain land outside of the territory for which the drain was designed and intended is unauthorized.  p. 185.

24. DRAINS.—*Repair of Drain.—Extension of Drain.—When Authorized.—Statute.*—In a proceeding to repair a drain by

tiling and covering it, the drainage commissioners are authorized to depart from the specifications of the original ditch by changing its course, or by extending its length, when necessary to "render the work efficient in performing the drainage which the original drain was intended to accomplish" (§6174 Burns 1914). p. 186.

From Hamilton Circuit Court; *Ernest E. Cloe,* Judge.

Petition by Roy Hershman and others to tile and cover a portion of an open drain. Joseph Rockey and others filed remonstrances to the report of the drainage commissioners. From a judgment confirming the report, and ordering the work done, the remonstrators appeal. *Affirmed.*

*George W. Osborn,* for appellants.
*J. F. Neal* and *N. C. Neal,* for appellees.

MYERS, J.—This was a proceeding to tile and cover a portion of an open public drain, known as the John M. Endicott drain, as provided by §19 of an act of the General Assembly in force April 10, 1907, as amended in 1913, Acts 1913 p. 152, §6174 Burns 1914.

On August 10, 1917, Roy Hershman, S. A. Hershman, Edward Harrell, W. H. Ross, and L. W. Pearson, owners of tracts of land affected and assessed for the construction of the Endicott drain, filed their petition in the Hamilton Circuit Court, and the court in which the original petition was filed and the proceedings had for the construction of the Endicott drain, stating, in part, that a portion of that drain was out of repair; that it could be more economically repaired and be made to do the work intended by tiling it. On October 2, 1917, by leave of court, Lora W. Pearson withdrew his name from the petition. Such proceedings were then had that the court ordered the petition docketed as a pending cause. Thereafter, on February 25, 1918, the cause being at issue upon the petition and remonstrance thereto filed, evidence was heard, and the court there-

upon found that a certain portion of the Endicott ditch (describing it) was out of repair and not sufficient to properly perform the drainage for which it was designed and intended, and referred the petition to drainage commissioners for report. Afterwards, on July 2, 1918, the commissioners made their report in favor of the proposed work and, among other things, reported that certain named persons, among whom were Mary F. Osborn, Albert Silas Osborn, and Retta Lee, who were not mentioned in the petition and had not remonstrated, were owners of land affected by the proposed repairs. Thereupon the court ordered notice to these parties of the filing of the report, and fixed the time, July 15, 1918, for the hearing. On July 13, 1918, proof of notice was made of the filing of the commissioners' report and of the time of hearing to Albert S. Osborn, Mary F. Osborn and Retta Lee. Prior to the date for the hearing, and within time, certain interested parties whose lands were affected by the proposed drainage, filed separate remonstrances. On December 30, 1918, upon application of the petitioners, the report of the drainage commissioners was set aside, and the matter referred back to the same commissioners for a new report. On February 15, 1919, the commissioners, among other things, reported the proposed drain as practical; that when completed it would improve public health, reclaim certain lands, and was of public utility; that it would benefit several highways; and that the cost of construction, repairs, damages and expense incident to the proposed work would be less than the benefits resulting therefrom. The report definitely fixed the route of the proposed drain and the best method for securing an outlet therefor; the manner in which the entire work should be done; estimated total cost of the proposed construction; named the persons and gave a brief description of the land owned by each of them, with the

assessment against each tract, the highways benefited, and the assessment against the township in which they were located. The aggregate assessments equaled the total cost of the proposed improvement.

To this report, eleven landowners separately and severally remonstrated, assigning statutory causes 1, 5, 7, 8, 9 and 10, as authorized by §4 of an act in force April 10, 1907, as amended in 1917, Acts 1917 p. 292, §6143 Burns' Supp. 1921. The issue formed by the petition and the several remonstrances filed thereto were submitted to the court for trial, and, upon the evidence adduced, the court found that the report of the drainage commissioners should be confirmed; the assessments made thereby approved, and the proposed reconstruction should be established. Judgment was rendered accordingly, and the supervision of the work assigned to the county surveyor. Twelve of the parties against whom judgment was rendered separately and severally moved for a new trial, which was overruled, and this ruling and that the "court had no jurisdiction to pronounce the judgment appealed from" are assigned as errors.

Appellees have not discussed the merits, nor have they presented a motion to dismiss this appeal as to all or any of the appellants. They have been content to make certain general as well as specific assertions, tending to challenge the jurisdiction of this court to examine this case upon its merits. Counsel for appellants have not replied.

Appellees insist: (I) That the transcript in this case affirmatively shows that it is not full and complete in that it appears (a) that certain papers and proceedings are not copied therein, but are referred to as "here insert"; (b) the clerk's certificate refers to the "second remonstrance" and the "second report" of the drainage commissioners, when there are no

order-book entries of such remonstrance or of such report. Meeting this objection, it is sufficient to say that it unmistakably appears that the report of the drainage commissioners and the remonstrances, and the action of the court thereon, to which reference is made in the clerk's transcript by the words "here insert," were all superseded by the court's re-reference to the commissioners. Furthermore, the proceedings up to this point are not challenged. Hence it must necessarily follow that the omissions noted in the transcript by "here insert," of whatever character, could have no bearing on the questions which arose on the issues finally tried, resulting in the judgment from which this appeal was taken. It being apparent that the matters thus omitted were immaterial, we must approve the practice which left them out of the transcript. The objection relative to the "second remonstrance" and the "second report" is too trivial to warrant us in taking time and space to further consider it.

(II) It is next asserted that the assignment of errors does not comply with Rule 6 of this court, in that (a) the full names of all the parties to the proceedings are not stated; (b) that the names of appellants in this assignment do not correspond with the names mentioned in the several remonstrances; (c) that the names of the parties to this appeal do not correspond to the names making the motion for a new trial; (d) that the persons named in the assignment of errors are not the same as those mentioned in the pleadings.

Preliminary to our discussion of the questions here presented, it may be suggested that the assignment of errors in this court is appellant's complaint presenting questions of law only to be determined from the record. Furthermore, the long-settled practice and Rule 6 of this court require the assignment to contain, either in

the title or in the body thereof, the full names of all the parties affected by the judgment from which the appeal is taken. This requirement is jurisdictional and must obtain in all cases except as otherwise modified by statute. *Gunn* v. *Haworth* (1902), 159 Ind. 419; *Nordyke & Marmon Co.* v. *Fitzpatrick* (1904), 162 Ind. 663.

In the instant case, the remonstrances were filed against the report of the commissioners. The remonstrators were the losing parties. All but one appealed, and one other person, a party to the judgment, joined with them, and all are named in the assignment of errors as appellants, but as to certain ones, the assignment does not contain their christian names in full. This being a drainage proceeding, according to rulings precedent, the drainage statute (§6141 Burns 1914, Acts 1907 p. 508) has been construed as modifying the above rule in this class of cases, so that, if the persons named in the assignment of errors correspond to the names given by the persons themselves in their own pleadings, or as given in the judgment, the assignment in that regard will be deemed sufficient. *Goodrich* v. *Stangland* (1900), 155 Ind. 279; *Keiser* v. *Mills* (1903), 162 Ind. 366; *Smith* v. *Gustin* (1907), 169 Ind. 42; *Kline* v. *Hagey* (1907), 169 Ind. 275; *Nisius* v. *Chapman* (1912), 178 Ind. 494.

This appeal was taken in term and in accordance with §6143 Burns' Supp. 1921, *supra*, wherein it is provided that: "All parties shall take notice of and be bound by such appeal, and all proceedings in the matter of such drainage shall be stayed until its determination." Furthermore, §675 Burns 1914, Acts 1895 p. 179, authorizes "any number of co-parties against whom a judgment has been taken" to prosecute a term-time appeal from such judgment to the Supreme Court without making other coparties not appealing parties to the appeal, and who "shall be bound by the

judgment on appeal to the same extent as if they had been made parties," although they are not named appellants or appellees in the assignment of errors. *H. C. Smith Coal Co.* v. *Finley* (1921), 190 Ind. 481; *Ward* v. *Yarnelle* (1910), 173 Ind. 535; *Pein* v. *Miznerr* (1908), 170 Ind. 659, 663; *Keiser* v. *Mills, supra; Smith, Trustee,* v. *Wells Mfg. Co.* (1896), 144 Ind. 266, 269; *Helms* v. *Cook* (1915), 58 Ind. App. 259; *Smith* v. *Wells* (1919), 72 Ind. App. 29.

Noticing appellees' second objection, it will be observed that the name Albert S. Osborn appears in the assignment, when in the remonstrance, motion 6, 7. for a new trial and in the judgment we find the name of Albert Osborn. The report of the commissioners in the first instance named Albert Silas Osborn as a person whose land was affected, and the court ordered notice to Albert S. Osborn. The name Rosa E. Rockey in the assignment of errors is the same as in the remonstrance, but the judgment is against Rose E. Rockey. The assignment has the name of Wm. R. Hershman, but from the record we learn that the petition described lands belonging to William M. Hershman; the remonstrance signed by W. M. Hershman; the judgment assessing benefits against the lands of Wm. E. Hershman; judgment for certain costs against W. R. Hershman, and W. R. Hershman making the motion for a new trial. As to these parties who are named as appellants, the record justifies the conclusion that Albert S. Osborn is the person against whom judgment was taken, and that Rosa E. Rockey and Rose E. Rockey are one and the same person; hence, the assignment as to them is sufficient. There was no judgment rendered for or against Wm. R. Hershman, except for certain costs, a grievance for the determination of which an appeal to this court will not be entertained. *Win-*

*field* v. *McCaslin* (1917), 186 Ind. 307; *State, ex rel.,* v. *Lyons* (1909), 173 Ind. 278.

It is only persons who are parties to a final judgment or their representatives who can appeal from such judgment. *Jager* v. *Doherty* (1878), 61 Ind. 8. 528. Consequently, as Wm. R. Hershman was a stranger to the judgment, the appeal as to him, on motion, might have been dismissed, or it may be treated as surplusage with respect to those who are proper parties to the appeal. *Jager* v. *Doherty, supra; Thomas, Admr.,* v. *Chicago, etc., R. Co.* (1894), 139 Ind. 462; *Smith* v. *Gustin, supra; Campbell, etc., Co.* v. *Souders* (1917), 64 Ind. App. 138.

Wm. E. Hershman was a coparty with the other appellants named in the judgment, and no such name appearing in the assignment of errors either as 9, 10. appellant or as appellee, we may assume that he did not appeal. Consequently, as we have seen, his failure to appeal would not affect the right of his coparties to do so in term without naming him either an appellant or an appellee. The facts before us would justify the inference that William M. Hershman and W. M. Hershman are one and the same person, but as he is not a party to this appeal or to the judgment appealed from, and not shown to have any interest affected by the appeal, it was unnecessary to make him a party. *Southern R. Co.* v. *Elliott* (1907), 170 Ind. 273; *New American Oil, etc., Co.* v. *Troyer* (1905), 166 Ind. 402.

The assignment of errors names all of the petitioners as appellees, except W. H. Ross and L. W. Pearson, who, after signing the petition, became remonstrators. 11. Counsel who appear in this court for the appellees generally, represented the petitioners only in the trial court. The persons, other than the petitioners and remonstrators, whose lands were assessed to pay for the proposed improvements, except one F. A. Hersh-

man, are all appellees.  These persons became parties
to the record through the report of the drainage com-
missioners.  They were neither petitioners nor remon-
strators.  They were parties to the judgment in the
sense that the commissioners' report was approved and
the assessments against their lands were confirmed.
Section 6143 Burns' Supp. 1921, *supra,* in addition to
the provisions hereinbefore stated, authorizes "any
owner of lands affected by the work proposed and re-
ported benefited or damaged, to remonstrate against
the report."  It gives a right of appeal from "the order
of the court approving and confirming the assessments,
and declaring the proposed work of drainage estab-
lished."  In this class of cases, the procedure provided
in this statute must be followed in order to perfect an
appeal.  The determination of such appeal is effective
as a direction to the trial court in its further orders in
the premises, so that stopping the proceedings at this
point until the issues thus presented are finally settled,
in no manner unalterably affects the interest of this
class of nonactive parties.  *Thompson* v. *Ryan* (1915),
183 Ind. 232.  If they were not necessary parties to the
appeal, the omission of one or all of them would not
warrant this court in refusing to assume jurisdiction
and to pass upon the merits of an appeal where it ap-
pears that all of the essential parties necessary to a final
determination of the questions presented are before it.
Hence, we conclude that appellees' second objection is
not well taken.

(III) It is further claimed that, for the failure of
some of the appellants to join in the appeal bond, or in
the absence of a showing that the bond was filed
12-14. on behalf of all of them, the appeal was not in
term.  The record discloses that all of the remon-
strators, at the time the court overruled their motion
for a new trial, and as a part of the same order-book

entry, prayed an appeal to the Supreme Court, which was granted, bond fixed, and thirty days time given in which to file the bond. Thereafter, and within time, it appears that Joseph Rockey and Albert Osborn "filed their appeal bond" with surety to the approval of the court, conditioned that Joseph Rockey, Albert Osborn, et al. would "well and truly prosecute said appeal, and abide by and pay the judgment and costs which may be rendered or affirmed against them." We take it that the pronoun "them" in the preceding sentence refers to Joseph Rockey, Albert Osborn, and others, who, as remonstrators, had prayed an appeal. All of them have assigned errors and are actively prosecuting this appeal. It would seem to us that the terms of this bond, although not clearly worded, must be construed as having been given to indemnify the appellees Roy Hershman, S. A. Hershman and Ed Harrell named therein, who were all the petitioners, and the only appellees actively interested in the real controversy, against loss by reason of the appeal prayed and here waged. True, the bond was not signed by all who were named as appellants, nor is it necessary that all should sign in order to make it a valid obligation. *Railsback* v. *Greve* (1877), 58 Ind. 72, 79; *Hinkle* v. *Holmes* (1882), 85 Ind. 405, 410; *Thompson* v. *Ryan, supra.* The law under which this appeal was taken required the giving of an appeal bond. The statute (§679 Burns 1914, §638 R. S. 1881) makes provision by which the liability on such bonds is to be determined. The instant bond may be regarded as defective, in that it does not name all of the appealing parties, but refers to those joined as appellants, and not named, by the affix "et al". Moreover, for aught here appearing, all of the appellees named in the assignment of errors have entered a general appearance by the filing of a brief in which they assert, among other things, that appellants

have shown no reversible error, and that the judgment should be affirmed. Such an appearance avoids the necessity of giving notice, even if notice was required in order to give the court jurisdiction over these appellees. In the Goodrich case, *supra,* Goodrich alone took an appeal in term. He gave bond conditioned that *he* would prosecute the appeal. In all respects, it was personal to him. For the reasons pointed out, that case is distinguishable from the case at bar. In conclusion, we hold that the legal effect of the instant bond inured to the benefit of all the judgment defendants joining in this appeal.

(IV) It is claimed that under the assigned error, the overruling of the motion for a new trial, appellants have discussed questions arising upon the evidence which should not be considered by this court, for the reason that the evidence is not properly authenticated. At the close of the evidence is the recital of the reporter: "And this was all the evidence given in this hearing of this case". The court's certificate to the bill of exceptions containing the evidence recites: "That the foregoing typewritten transcript of the evidence so taken and reported as aforesaid contains all of the evidence given in the trial of this cause on the remonstrances of Joseph Rockey, *et al.* to the second report of the drainage commissioners." The issues tried, resulting in the judgment from which this appeal was taken, were formed by the remonstrances filed to the report. The authentication was sufficient.

(V) Appellees finally insist that the bill of exceptions containing the evidence is not properly in the record, for the reason that no notice of the application for extension of time to tender the bill was given to certain appellees herein who were not represented by attorneys in the trial court. Section 661 Burns 1914, Acts 1911 p. 193, requires at least three

days' notice of the filing of such application. This notice may be waived, as was done in this case by all who appeared to the application, either in person or by attorneys. It was not necessary to give notice to persons who were neither petitioners nor remonstrators, as they were not necessary parties to the appeal.

(VI) Looking to the merits, counsel for appellants insist that the exclusive jurisdiction to clean, repair or extend public drains is in the board of county commissioners, and that circuit courts have no such jurisdiction. They cite Acts 1915 p. 417. That enactment was repealed in 1917, §6161p3 Burns' Supp. 1921, Acts 1917 p. 384, §10. Section 19 of the 1907 Act, as amended (Acts 1913 p. 152, *supra*), gave the Hamilton Circuit Court jurisdiction to entertain the petition, and expressly provides that the procedure in such matters shall conform to the requirements of §3, Acts 1907 p. 508, §6142 Burns 1914, and amended §4, Acts 1917 p. 292, §6143 Burns' Supp. 1921.

(VII) Appellants, in support of their motion for a new trial, insist that the decision of the court was not sustained by sufficient evidence; that it was contrary to law; and that the court erred in admitting certain evidence. The first two of these causes may be considered together, for, as here presented, the last is made to depend upon the claim that there was no evidence to support facts essential to sustain the court's decision. *Deal* v. *State* (1895), 140 Ind. 354; *Combs* v. *Combs* (1914), 56 Ind. App. 656.

Appellants first make the point that there was no evidence from which the court could find the total cost of the proposed drain, or the total benefits to be derived therefrom. Hence, the court could not and did not find these ultimate facts, which were essential in order to avoid the imperative command of the eighth cause for remonstrance. Appellants predi-

cate this claim upon the ruling in the case of *Katterhenry* v. *Arensman* (1915), 183 Ind. 347, 108 N. E. 101, where it was held that the burden rested upon the petitioners to show that the total benefits would equal or exceed the cost of construction. The drainage commissioners' report was not introduced in evidence, and for this omission, appellants assert that the petitioners cannot rely upon the report making for them a *prima facie* case.

It may be regarded as settled that the report of the drainage commissioners, showing the "costs, damages and expenses" of such work to be less than the total benefits to the lands affected, is admissible in evidence, and is to be considered by the court as *prima facie* evidence of such facts. §6151 Burns 1914, Acts 1907 p. 507, §17; *Katterhenry* v. *Arensman, supra; Lake Agricultural Co.* v. *Brown* (1917), 186 Ind. 30; *Wilson* v. *Tevis* (1916), 184 Ind. 712; *Shields* v. *Pyles* (1912), 180 Ind. 71.

In the case of *Martin* v. *Adair* (1920), 189 Ind. 177, it was held that if the remonstrances were supported by sufficient evidence, and there was no evidence offered by the petitioner, the *prima facie* case made by the report could not be considered for any purpose. See, also, *Cleveland, etc., R. Co.* v. *Wise* (1917), 186 Ind. 316; *Moore* v. *Ryan* (1919), 188 Ind. 345. In a case of this character, drainage commissioners are a legally constituted body authorized and charged by statute with the duty of reporting to the court the facts in question tendered by the petition and if favorable to the petitioners and not challenged by remonstrances, they may be taken as *prima facie* true, and hence sufficient to warrant the court in making the final order approving and confirming the assessments and declaring the proposed work of drainage established.

In the instant case, the petitioners did not rely upon

the proof furnished by the report, as was done in the Martin case. Following the evidence given in support of the remonstrances, the petitioners introduced many witnesses, who testified relative to the cost of the proposed work and the benefits which would accrue to the territory thus affected; also evidence tending to show the work proposed and reported would properly drain the lands to be affected. While there was sharp conflict in this evidence, yet we are not prepared to say that there was no evidence from which the court could find the facts—the cost ($6,578.30) of the proposed work and the aggregate benefits ($6,614.30), as reported by the drainage commissioners. The report was a part of the record, and the remonstrances served to challenge the reported facts. The court found against the several remonstrances. Its adoption of the commissioners' report amounted to a finding of the facts as therein stated; hence, we hold that the particular point made by appellants cannot be sustained.

Appellants also claim that the court invaded the province of the drainage commissioners by directing the manner in which the work of repairs should be done. This proposition is evidently directed to the court's first order in the premises, but it must be remembered that the report made pursuant to that order was set aside and the matter re-referred to the commissioners, with the direction that they "view the land and perform the duties of their office," and time was fixed when they should report. Their duties were prescribed by §6142 Burns 1914, *supra*, and a direction to them to do their duty is unobjectionable. An examination of the report indicates that the commissioners attempted to follow the statute in this respect. The report contains specifications as to how the work should be done and the size of tile to be used. These were matters wholly for the commissioners and their judg-

ment thereon was conclusive, not only as between the parties, but upon the court as well. *Thompson* v. *Ryan, supra.* As the court made no changes in the report, this claim is without merit.

Appellant Rockey insists that only a part of his land assessed for the original drain was assessed to pay for the proposed work covered by this proceeding, and, for that reason, the report was not according to law. The original drain, and the one affected by the proposed work, was constructed under the direction of the court in which this proceeding was properly commenced. *O'Toole* v. *Tudor* (1910), 175 Ind. 227; *Stockton* v. *Pancoast* (1912), 178 Ind. 203; *Love* v. *Jones* (1920), 189 Ind. 390. Amended §19, Acts 1913 p. 152, *supra,* under which this proceeding was begun, provides for the apportionment of the costs of the proceedings and the cost of such repairs according to the benefits to be derived therefrom. This provision of the statute limits the assessments to the territory benefited by the proposed work. Thus, it would seem that the report in this particular followed the statute and was according to law.

Appellant Rockey, further complaining, says that the drainage commissioners failed to report a drain "with ample means for the drainage or protection from overflow of the land to be affected, having in view future contingencies as well as the present." §6142 Burns 1914, *supra.* It must be kept in mind that this is a proceeding to repair, by tiling and covering an existing public drain. Rockey's grievance is caused by the failure and refusal of the drainage commissioners to extend the Endicott drain west from 1,600 to 1,900 feet into what appears to be a sump on the west end of the northwest quarter of the southeast quarter of section 5, owned by him. The Endicott drain started forty rods south of the northeast corner of the

northeast quarter of the southeast quarter of section 5, and thence in an easterly direction. We have carefully read the evidence furnished by the record before us, and from the information thus obtained, it appears that the most feasible and practical outlet for the drainage of this sump would be the Endicott drain. The present supposed outlet through the Pierce drain is entirely insufficient, and we doubt whether this outlet, even though reconstructed, would give the fifteen-acre sump efficient and practical drainage. If we understand correctly the contentions of the parties to this proceeding, as presented by the petition, commissioners' report, Rockey's remonstrance, and evidence introduced, we are not in a position to order the relief to which appellant Rockey seems to be entitled. The proceedings at bar are limited to the drainage of the territory for which the Endicott ditch was designed and intended.

The evidence relative to the topography of the northwest quarter shows the overflow water from this sump runs to the east, but until this condition arises, a portion of this land slopes to the sump and the remainder to the east and south. This particular quarter quarter of land was assessed $10 on account of the Endicott drain. It also fairly appears that the Endicott ditch was not designed and intended to drain this land beyond the water shed to the east. Of course, if the Endicott ditch was designed and intended to drain and reclaim this particular low land, then the commissioners were authorized by statute to depart from the Endicott ditch specifications by changing its course, or by extending its length, when necessary to "render the work efficient in performing the drainage which the original drain was intended to accomplish." *Huffman* v. *Newlee* (1919), 189 Ind. 14. But as said in the case last cited, p. 22: "As to whether such changes and extensions are reasonably necessary to accomplish such

purpose presents a question of fact to be decided as other such questions are determined from the facts presented in each case". The trial court, as we have seen, had evidence before it relative to these facts, and its finding thereon we cannot disturb.

James S. Shannon, county surveyor, was permitted to testify on cross-examination that he had learned, by reference to the records in his office, that Rockey's land had been assessed on account of drains other than the one in question. If it be conceded that this evidence was improper, the record in this case is such that we would not reverse the judgment on that account.

Judgment affirmed.